WINDOM, Presiding Judge.
Kerry M. Spencer, an inmate on death row at Holman Correctional Facility on Alabama’s death row, appeals the Jefferson Circuit Court’s summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P., attacking his capital-murder convictions and sentences of death.
In 2005,' Spencer was convicted of murdering Birmingham Police Officers Carlos Owen, Harley A. Chisholm III,* and Charles R. Bennett and of attempting to murder Officer Michael Collins. The jury recommended that Spencer be sentenced to life imprisonment without the possibility of parole. The circuit court declined to follow the jury’s recommendation and sentenced Spencer to death for his capital-murder convictions and to life imprisonment for the attempted-murder conviction. On direct appeal, this Court ultimately affirmed Spencer’s .convictions and sentences. See Spencer v. State, 58 So.3d 215 (Ala.Crim.App.2008). This Court issued the certificate of judgment on September 17,2010.
On September 16, 2011, Spencer filed a timely Rule 32, Ala. R.Crim. P., petition in the circuit court attacking his capital-murder convictions and sentences of death. Spencer filed amended petitions in March 2012 and August 2012.. In July 2013, the circuit court issued an order summarily dismissing Spencer’s postconviction petition. Spencer moved the circuit court to reconsider its dismissal. That motion was denied. Spencer then filed a timely notice of appeal to this Court.
On direct appeal, this Court set out the following facts surrounding the murders of *579 three Birmingham police officers and- the attempted murder of a fourth officer:
“On July 17, 2004, Officers Carlos Owen, Harley A. Chisolm III, and Charles R. Bennett, of the Birmingham Police Department, were shot and killed, and a fourth officer, Officer Michael Collins, also of the Birmingham Police Department, was shot but survived. Officer Collins testified that while on patrol that morning, he heard a radio transmission from Officer Owen indicating that Officer Owen was getting out of his police vehicle at the 1600 block of 18th Street in Ensley to investigate something suspicious or a miscellaneous complaint. Officer Collins stated that he was familiar with the area so he proceeded to that location to back up Officer Owen. Officer Collins testified that when he arrived, he saw Officer Owen standing at the screen door of an apartment speaking with a black male, so he got out of his vehicle and began to approach the apartment. According to Officer Collins, the man was belligerent, yelling ‘ “F[-] the police.” ’ (R. 706.) Officer Collms stated that the individual told Officer Owen, ‘ “[Y]ou hide behind that badge and gun. I’ll f[-] you up. Take that badge and gun off, I’ll f[-] you up.” ’ (R., 709.) Officer Owen removed his badge and a female neighbor standing nearby called Officer Owen by his nickname, ‘Curly,’ at which time Officer Owen put his badge back on, put his arm around the female and then the two officers walked back toward their automobiles. Carolyn Slaughter testified that she lived in the apartment complex at the time of the shootings. Slaughter stated that she walked outside and saw Officer Owen talking to Nathaniel ‘Nate’ Woods;[1] according to Slaughter, she heard .Nate tell Curly to ‘“[t]ake off that mother f[- - -]ing badge and that gun and I will whoop your mother • f[- - -]ing ass.” ’ (R. 968.) Slaughter testified that Officer Owen removed his badge, but put it back on when she walked- over to him and had a conversation with him." According to Slaughter, Nate told Officer Owen to get a warrant, and Officer Owen responded that the narcotics task force would be back.
“Officer Collins testified that as they walked back to their automobiles, Officer Chisolm arrived and got out of his automobile. According to Officer Collins, he and Officer Owen were informing Officer Chisolm of the series of events that had transpired and someone inside the residence continued yelling, ‘F[-] the police.’ (R. 710.) Officer Owén informed Officer Collins that the man at the doorway was Nathaniel Woods. Officer Collins testified that he then conducted an inquiry through the computer equipment in his police vehicle, ' checking the City of Birmingham files and the National Crime Information Center (‘NCIC’) files, and he ascertained that a person named Nathaniel Woods, matching the general physical description of the man in the doorway and with an address in the area had an outstanding misdemeanor arrest warrant from the City of Fairfield Police Department.
[[Image here]]
“According to Officer Collins, Officer . Chisolm came to the back of the apartment and, while he was showing Woods the printout and photograph, told him that the arrest warrant from Fairfield was for assault, at which time Woods *580 again cursed the officers and then turned and ran back inside the apartment. Officer Collins testified that Officer Chisolm pursued Woods into the apartment. Officer Owen followed Officer Chisolm into the apartment, with Officer Collins following Officer Owen. Officer Collins testified that when he reached the kitchen, he- saw Officer. Chi-solm holding Woods on the ground as if he were about to place Woods in handcuffs, and Officer Owen backed away a bit ‘like he had him and it was over.’ .(R. 733.) . Officer Collins stated that he heard Woods yell, ‘ “I give up. I give up. Just don’t spray me with that mace.” ’ (R. 733.) He stated that .he then heard a radio transmission from Officer Bennett that ‘ “[t]hey are coming out the front.” ’ (R. 733.) Officer Collins testified that he was unable to proceed through the apartment to the front door because Woods and Officers Chi-solm and Owen were blocking the doorway, so he turned to go put the back door to go around the apartments to the front to assist Officer Bennett. According to Officer Collins, none of the officers had their weapons drawn when they entered the apartment, and he did not see any of the officers draw their weapons while he was inside the apartment.
“According to Officer Collins, as he got to the back door, he heard the shooting begin inside the apartment and then felt a slap on his side and on his pistol which was holstered. He stated that he was stunned, and that he radioed a ‘shots fired’ call over the police radio, and ran to the back of his police car. Officer Collins then radioed a ‘double aught’ call, which he stated was the most drastic request for assistance, meaning an officer was down and assistance was needed from any precinct in the city. Officer Collins testified that he heard additional gunfire as he was taking cover behind his automobile and that bullets were striking his vehicle. He stated that he looked at the doorway of the apartment and saw a man standing just outside the apartment and firing a gun in his direction. Officer Collins stated that his holster was damaged during the shooting, that he had a hole in his pants, that he sustained a wound in his leg, and that he later found a metal fragment in his pants pocket. Officer Collins identified Spencer in court as the man he saw standing outside the apartment shooting at him.

U

“Several of the officers who responded to the double-aught call testified at trial. Officer Hugh Butler testified that he arrived at the scene and saw another officer in position at the front door of the apartment, so he approached the door as well; according to Officer Butler, as he walked toward the front door, he saw Officer Bennett lying on the ground, stating, ‘I looked down and saw his eyes wide open, his pupils were blown and he had a hole in his face with a little bit of smoke coming out of it.’ (R. 850.) He stated that he and other officers entered the front door of the apartment and that he saw Officers Owen and Chisolm lying on the floor ‘pretty obviously dead.’ (R. 862.) Officers discovered an SKS assault rifle outside the front door of the apartment, and a number of weapons in plain view in assorted rooms of the apartment. Officer Fred Alexander arrived in the front of the apartment and radioed that there was an officer down in the front of the apartment and then made an additional radio transmission, indicating that two more officers were down inside the apartment. The officers checked the apartment to ensure that no one else *581 was present and then established a perimeter around the apartment to begin searching the area for the suspects and to preserve the scene for evidence technicians. Officer Terrance Hardin testified that before entering the apartment, he secured the SKS assault rifle in a patrol car and then joined the other officers in entering the apartment.
[[Image here]]
“A number of officers canvassed the neighborhood after failing to locate the suspects in their initial search of the apartment. Sgt. James Blanton testified that he led one team of officers in a search of one side of the block while another team of officers searched the other side of the block. After searching some of the houses, his team was informed that the other search party had encountered one of'the suspects, so. his team went to that residence to assist. Sgt. Blanton testified that the suspect, who was discovered in the attic of the residence, was taken into custody. Sgt. Blanton identified Spencer in court as the suspect taken into custody.
[[Image here]]
“Dr. Gary Simmons, a forensic pathologist with the Jefferson County coroner’s office, testified that he performed the autopsies on all three officers and concluded that each had died of multiple gunshot wounds. Dr. Simmons testified that stippling on Officer Chisolm’s face indicated that at least one of the bullets had been fired from close range. He stated that, in addition to wounds resulting from gunshots that grazed but did not penetrate deeply into his body, Officer Chisolm suffered multiple gunshot wounds to his back and side, and a number of those bullets traveled through and exited his body. Dr. Simmons further testified that Officer Owen did not exhibit signs of stippling. He stated that Officer Owen sustained grazing gunshot wounds and a number of entrance and exit wounds associated with multiple gunshot wounds to his back and arm. Dr. Simmons testified that Officer Bennett exhibited signs of soot and stippling to his skin, which indicated that one of the bullets was fired at close range to his face. He stated that Officer Bennett sustained a very close-range gunshot wound below his left eye, which passed through his brain case and portions of the brain before exiting though the back of his skull; he further testified that Officer Bennett sustained a gunshot wound to his chest that lacerated his heart and impacted his liver, esophagus, aorta, right adrenal gland, and spine but did not exit his body, and entrance and exit wounds on his arm associated with a third gunshot.”
Spencer, 58 So.3d at 220-24.

Standard of Review

Spencer appeals the circuit court’s summary dismissal of his petition for postcon-viction relief filed pursuant to Rule 32, Ala. R.Crim. P.—a proceeding initiated by Spencer.
According to Rule 32.3, Ala. R.Crim. P., “[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Rule 32.6(b), Ala. R.Crim. P., addresses the pleading requirements for postconviction petitions and states:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be *582 sufficient to warrant any further proceedings.”
This Court has stated the following concerning the scope of Rule 32.6(b), Ala. R.Crim. P.:
“ ‘Rule 82.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if trae, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.’’
Boyd v. State, 913 So.2d 1113, 1126 (Ala.Crim.App.2003) (emphasis in original).
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will hot satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b).”
Hyde v, State, 950 So.2d 344, 356 (Ala.Crim.App.2006) (emphasis in original).
Moreover,
“[a]n evidentiary hearing on a coram nobis petition [now a Rule 32 petition] is required only if the petition is ‘meritorious on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
Moore v. State, 502 So.2d 819, 820 (Ala.1986),
“The sufficiency of pleadings in a Rule 32 petition is a question of law. ‘The standard of review for pure questions of law in criminal cases is de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003).’” Ex parte Beckworth, 190 So.3d 571, 573 (Ala.2013) (quoting Ex parte Lamb, 113 So.3d 686, 689 (Ala.2011)).
With these principles in mind, this Court reviews the claims raised by Spencer in his brief on appeal.
I.
Spencer first argues that the circuit court erred in adopting the State’s proposed order when summarily dismissing his postconviction petition. Specifically, Spencer argues that the circuit court erred in adopting the State’s proposed order without affording him the benefit of an evidentiary hearing, that he was denied the right to participate in the process, that the order showed the judge’s partiality, and that the order contained the identical errors contained in the State’s proposed order. Spencer relies on Ex parte Ingram, 51 So.3d 1119 (Ala.2010), and Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d — (Ala.2011), to support this claim.
In Ex parte Ingram, the Alabama Supreme Court first considered the validity of a court’s adoption of the State’s proposed order denying relief on a postconvic *583 tion petition. The Supreme Court found that the court’s wholesale adoption, of the State’s order constituted reversible error because the order, on numerous occasions, stated that the facts of the case were within the personal knowledge of the circuit judge even though a different judge had presided over Ingram’s trial. Ultimately, the Supreme Court concluded that the misstatements in the order were so blatant, that it was clear that the judge who signed the order did not read the order before adopting it as his own. The Court stated:
“Though the ‘clearly erroneous’ standard of review may apply in cases in which the trial court has adopted, as its own, the proposed order of the prevailing party, the analysis proffered by both the Court of Criminal Appeals and the State fails to admit ... the most fundamental and the first requirement: that the order and the findings and conclusions in such order are in fact those of the trial court.”
51 So.3d at 1124.
The next year, in Ex parte Scott, the Alabama Supreme Court revisited this issue and found reversible error after a circuit court adopted the State’s answer as its order dismissing the petition. The Court stated:
“Here, we do not even have the benefit of an order proposed or ‘prepared’ by a party;, rather the order is a judicial incorporation of a party’s pleading as the ‘independent and impartial findings and conclusions of the trial court.’ [Ingram, 51 So.3d] at 1124. The first and most fundamental requirement of the reviewing court is to determine ‘that the order and the findings and conclusions in such order are in fact those of the trial court.’ Id. at 1124. The trial court’s verbatim adoption of the State’s answer to Scott’s Rule 32 petition as its order, by its nature, violates this Court’s holding in Ex parte Ingram.”
Ex parte Scott, — So.3d at —.
More recently, in Ex parte Jenkins, 105 So.3d 1250 (Ala.2012), the Alabama Supreme Court clarified its earlier holdings in Ex parte Ingram and Ex parte Scott. In affirming a circuit court’s wholesale adoption of the State’s proposed order, the Supreme Court stated:
“The circumstances of this case differ from the circumstances presented in Ex parte Ingram and Ex parte Scott. In both of those cases it was clear from evidence before this Court that the orders signed by the trial court were not the product of the trial court’s independent judgment. In Ingram, that fact was clear from the statements contained in the order regarding the trial judge’s ‘personal knowledge’ and observations of Ingram’s capital-murder trial when the trial judge signing the proposed Rule 32 order did not presidé over Ingram’s capital-murder trial. In Ex parte Scott, thht fact was' clear from the materials before this Court, which contained the State’s responsive pleading adopted by the trial court as its order. In this case, however, there is nothing definitive in the record or on the face of the order that indicates that the order is not the product of the trial court’s independent judgment.

a

“This Court’s decision today should not be read as entitling a petitioner to relief in only those factual scenarios similar to those presented in Ex parte Ingram and Ex parte Scott. A Rule 32 petitioner would be entitled to relief in any factual scenario when the record before this Court clearly establishes that the order signed by the trial court denying postconvietion relief is not the prod *584 uct of the trial court’s independent judgment. See Ex parte Ingram. ”
105 So.3d at 1260.[2]
The above Supreme Court cases make clear that, regardless of the specific facts of a case, a reviewing court may not affirm a lower court’s wholesale adoption of a proposed order if the record clearly establishes that the adopted order “is not the product of the trial court’s independent judgment.” Ex parte Jenkins, 105 So.3d at 1260.
Here, the record shows that in September 2011 Spencer filed a postconviction petition in the circuit court, that he filed amended petitions in March 2012 and in August 2012, and that in December 2012 a status conference was held on the postcon-viction proceedings. In January 2013, Spencer moved the circuit court to set an evidentiary hearing. The circuit court requested that both parties file responses concerning what issues they believed necessitated an evidentiary hearing and/or if an evidentiary hearing was necessary. (C. 57-58; 65.) It was clear at this status conference that the circuit court was skeptical as to whether the case would proceed beyond the pleading stage. (R. 6.) The State filed its proposed order on June 27, 2013, and Spencer filed a proposed order on June 28, 2013. On July 5, 2013, the circuit court, in large part, adopted the State’s proposed order regarding Spencer’s motion for an evidentiary hearing and summarily dismissed Spencer’s postconviction petition. The circuit court added three pages at the beginning of the order, added facts related to the judge’s own personal knowledge regarding claim 1(A)(5) in Spencer’s petition, and modified the conclusion.
It is clear that the circuit court read the State’s proposed order and adopted a great portion of it as his own. This Court notes that, although the circuit court’s order contained many of the typographical errors contained in the States’ proposed order, a few typographical errors in a proposed order that is ultimately adopted by a trial court do not undermine the entire order. “We do not consider the few typographical errors at issue here, by themselves, as sufficient evidence upon which to base a conclusion that the trial court’s order is not a product of the trial court’s independent judgment.” Ex parte Scott, — So.3d at —.
Moreover, Spencer was given notice and an opportunity to file his own proposed order. The substance of the proposed orders filed by the State and Spencer were virtually identical to filings previously made in the circuit court in the form of answers or other pleadings. There is no allegation that Spencer was not served with the State’s proposed order—indeed the State had filed three similar answers to Spencer’s petition and amended petitions. Although the circuit court did refer to the order as an order on Spencer’s motion for an evidentiary hearing, it is clear that the parties were aware that the substance of the filings on the motion for an evidentiary hearing was whether any further proceedings would be necessary in *585 the case; i.e., whether the postconviction petition was due to be dismissed.
Based on the facts presented in this case, this Court holds that the circuit court’s order dismissing Spencer’s postcon-viction petition was the “product of the trial court’s independent judgment.”' See Ex parte Jenkins, supra. For these reasons, this Court finds no reversible error in the circuit court’s adoption of the State’s proposed order.
II.
Spencer next asserts that the circuit court erred in denying' his motion for discovery. This argument in Spencer’s brief consists of only two paragraphs and fails to make any specific argument concerning the circuit court’s denial of his motion for discovery. This section of Spencer’s brief fails to comply with the briefing requirements of Rule 28(a)(10), Ala. R.App. P. Rule 28(a)(10) provides that the argument section of an appellate brief shall contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.”
“An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned ..'.. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.”
Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) (citations omitted).
“ ‘It is not the job of the appellate courts to do a party’s legal research .... Nor is it the function of the appellate courts to “make and address legal arguments for a party based on undelineatéd general propositions not supported by sufficient authority or argument.”’ Pileri Ind., Inc. v. Consolidated Ind., Inc., 740 So.2d 1108, 1110 (Ala.Civ.App.1999), quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994). Because Jennings has failed to present sufficient argument, authority, or citation to the facts in support of this issue, we conclude that he has failed to comply with Rule 28(a)(10) and that this issue is, therefore, deemed to be waived.” .
Jennings v. State, 965 So.2d 1112, 1136 (Ala.Crim.App.2006). Thus, Spencer has waived this issue on appeal.
Moreover, to be entitled to discovery in a postconviction proceeding the petitioner must establish “good cause.” See Ex parte Land, 775 So.2d 847, 852-53 (Ala.2000), overruled on other grounds by State v. Martin, 69 So.3d 94 (Ala.2011).
“We emphasize that this holding— that postconviction discovery motions are to be judged by a good-cause standard—does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord [State v.] Lewis, [656 So.2d 1248,] 1250, [ (Fla.1994) ], wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida’s rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good , cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 1260, *586 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991).”
775 So.2d at 852. “[A] petitioner is not entitled to discovery in a Rule 32 proceeding if the discovery relates to issues that are procedurally barred.” State v. Martin, 4 So.3d 1196, 1198 (Ala.Crim.App.2008). When reviewing a discovery motion related to a postconviction proceeding, the court must consider the merits and procedural posture of the issues that relate to the discovery request.
“In its order, the circuit court noted that Davis was not entitled to discovery because the claims for which he sought discovery were either meritless or procedurally barred. Because we have determined ... that the circuit court did not err by summarily dismissing Davis’s claims, it follows that Davis did not meet the ‘good-cause’ standard for obtaining postconviction discovery.”
Davis v. State, 184 So.3d 415, 448 (Ala.Crim.App.2014).
Because the postconviction petition was due to be dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P., and Rule 32.7(d), Ala. R.Crim. P., the circuit court committed no error in denying Spencer’s request for discovery. See Ex parte Land, supra.
III.
Spencer next argues that the circuit court erred in summarily dismissing several of his claims that his trial counsel’s performance was ineffective at his capital-murder trial. Initially, Spencer argues that he satisfied the “permissive pleading standards” relative to Rule 32 proceedings; thus, the circuit court erred in summarily dismissing his postconviction petition.
Contrary to Spencer’s assertions, this Court has specifically held that the civil pleading standards do not apply to pleadings related to postconviction petitions and that the pleading requirements for post-conviction petitions' are more stringent.
“Although postconviction proceedings are civil in nature, they are governed by the Alabama Rules of Criminal Procedure. See Rule 32.4, Ala. R.Crim. P. The ‘notice pleading" requirements relative to.civil cases do not apply to Rule 32 proceedings. ‘Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent....’ Daniel v. State, 86 So.3d 405, 410-11 (Ala.Crim.App.2011). Rule 32.6(b), Ala.R.Crim., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel, supra. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, [the petitioner] was required to plead full facts to support each individual claim.”
Washington v. State, 95 So.3d 26, 59 (Ala.Crim.App.2012). “Rules 8, 9,' and 10, Ala. R. Civ. P., govern pleadings in civil cases. ‘Generally, the pleadings, in and of themselves, are considered relatively unimportant because cases are to be decided on the merits.’ Johnson v. City of Mobile, 475 So.2d 517, 519 (Ala.1985).” Daniel v. State, 86 So.3d 405, 411 n. 2 (Ala.Crim.App.2011). The same is not true for pleadings in postconviction proceedings.
When pleading a claim of ineffective, assistance of counsel in a postcon-viction petition, the petitioner,
“Not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced .by the acts or omissions, i.e., *587 facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde, 950 So.2d at 356. Spencer was required to do more than merely satisfy the “permissive pleading standards” related to civil cases—he was required to plead “full facts” to support each claim in order to survive the pleading stage and avoid summary dismissal.
“Moreover, an evidentiary hearing is not necessary in every case in which the petitioner alleges claims of ineffective assistance of counsel. The Alabama Supreme Court has stated:
“ ‘While it is true that our cases hold that a judge must conduct a hearing on a post-conviction petition that is meritorious on its face, a judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing on the effectiveness of those attorneys based upon conduct that he observed.’
“Ex parte Hill, 591 So.2d 462, 463 (Ala.1991). ‘[A] circuit judge who has personal knowledge of the facts underlying an allegation of ineffective assistance of counsel may summarily deny that allegation based on the judge’s personal knowledge of counsel’s performance.’ Partain v. State, 47 So.3d 282, 286 (Ala.Crim.App.2008) (citing Ex parte Walker, 800 So.2d 135 (Ala.2000)). Here, the circuit judge who presided over Stall-worth’s postconviction proceedings was the same judge who presided over, Stall-worth’s capital-murder trial and the same judge who sentenced Stallworth to death.
“Last, - ‘[t]his Court may affirm the judgment of the circuit court for any reason, even if not for. the reason stated by the circuit court! Acra v. State, 105 So.3d 460, 464 (Ala.Crim.App.2012).”
Stallworth v. State, 171 So.3d 53, 64 (Ala.Crim.App.2013).
“[W]hat must be alleged in order to make out a prima facie claim for relief— i.e., to avoid summary dismissal under Rule 32.7(d)[, Ala. R.Crim. P.,] for failure to sufficiently ‘state a claim’—depends upon the specific provision of Rule 32 upon which a claim for relief is based and on what ultimately must be proved in order to prevail on that provision.”
Ex parte Beckworth, 190 So.3d at 574.
With these principles in mind, this Court reviews the claims raised by Spencer in his brief to this Court.
A.'
Spencer argues that the circuit court erred in dismissing his claims that his trial counsel was ineffective during the pretrial proceedings of his capital-murder trial. He makes several different arguments in support of this contention. This Court addresses each claim individually.
1.
First, Spencer argues that his trial counsel was ineffective for failing to ensure that he was not tried in an “overwhelmingly prejudicial atmosphere.” (Spencer’s brief, at 20.) Specifically, Spencer argues that he was prejudiced by the presence of numerous uniformed police officers in the courtroom during his trial.
The circuit court stated the following when summarily dismissing this claim:
“While Spencer sets forth in great detail in the second amended Rule 32 petition his claim that an internal police memo *588 randum was sent out requesting an overwhelming police presence during Spencer’s trial, Spencer fails to specifically plead that this police presence actually occurred- during his trial. All Spencer alleges is that juror [L.B.] recalled seeing many police officers during trial and that juror [V.R.] recalled that police were present in the courtroom every day. Spencer does not set forth with any specificity the number of officers that were in the courtroom, whether the officers were in uniform, or whether the officers were armed. Spencer has not shown with specificity that the performance of his .attorneys was deficient or that he was prejudiced by counsel’s conduct. ■
“Spencer also alleges .that the police presence caused the trial court to override the jury’s life without parole jury recommendation. An evidentiary hearing is not required where the police presence did not cause this Court to override the jury’s life without parole sentence recommendation. In fact, this Court finds that there was not an overwhelming police presence in the courtroom during Spencer’s trial.”
(C. 87-88.),
The record of Spencer’s trial shows that defense counsel filed a pretrial motion requesting that officers who would attend the trial as spectators be ordered not to appear in the courtroom in their uniforms. (Trial C. 352.) The State responded:
“At this juncture, it is unknown whether or not the courtroom will be ‘full’ of uniformed officers, as [Spencer] speculates. Should it become necessary to diffuse what may appear to be an undue number of uniformed officers, this Honorable Court has the discretion to grant [Spencer’s] motion should it become necessary to minimize the number of uniformed officers in the courtroom at that time or to disperse them throughout the courtroom should they be seated as a group.”
(Trial C. 375.) The trial court then ruled:
“I’m not going to tell a uniformed officer who is on duty that comes up here to listen to the testimony for some period of time that he cannot come into the courtroom with his uniform on. I just don’t think that would be—now, if they bring 150 officers up here and want to fill up the courtroom, that’s a different matter. As a general rule, I’m not going to get involved in ordering people they can’t show up with a uniform on.”
(Trial R. 246-47.)
In the order dismissing Spencer’s postconviction petition, the circuit judge specifically found that, based on his personal knowledge of the trial, there had not been an overwhelming police presence in the courtroom. “A circuit court may summarily dismiss a Rule 32 petition without an evidentiary hearing if the judge who rules on the petition has ‘personal knowledge of the actual facts underlying the allegations in the petition’ and ‘states the reasons for the denial in a written order.’ ” Ex parte Walker, 800 So.2d 135, 138 (Ala.2000) (quoting Sheats v. State, 556 So.2d 1094, 1095 (Ala.Crim.App.1989)).
Moreover, the United States Supreme Court in Holbrook v. Flynn, 475 U.S. 560, 571-72, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), noted the inherent problems that arise when a “roomful” of armed uniformed guards are in a courtroom. Later, the Supreme Court in Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), noted the distinction between the presence of uniformed guards versus the presence of uniformed spectators.
“In contrast to state-sponsored courtroom practices, the effect on a defendant’s fair-trial rights of the spectator *589 conduct to which [the defendant] objects is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial....
“Reflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants’ spectator-conduct claims.”
549 U.S. at 76 (footnote omitted).
Recently, this Court in Jackson v. State, 169 So.3d 1 (Ala.Crim.App.2010) (opinion on return to remand), recognized that the presence of a large number of uniformed spectators may deprive a defendant of a fair trial. Adopting the analysis used by the United States Court of Appeals for the Eleventh Circuit in Woods v. Dugger, 923 F.2d 1454 (11th Cir.1991), this Court stated:
“Woods v. Dugger was clearly specific to its circumstances. The case involved the presence of a large number of uniformed probation officers following the death of a probation officer. The Court looked to the record and found that, based on the extensive pretrial publicity, the voir dire questioning, as well as the specific circumstances of the small community involved, the presence of the uniformed officers had deprived Woods of a fair trial.
[[Image here]]
“Here, there is no indication in the record that a large number of officers were present or of any prejudicial effect or influence caused by the presence of any officers. Moreover, there was no objection by Jackson as to the presence of the officers; although this does not preclude review on appeal, it does weigh against a finding of prejudice. See Ex parte Jackson, 68 So.3d 211, 213-14 (Ala.2010). As previously stated, there was no showing of undue prejudice caused by pretrial publicity. See Issue XXXIV. The jury was necessarily aware that the victims were police officers who were on duty at the time of the offense. See Centobie v. State, 861 So.2d 1111, 1127 (Ala.Crim.App.2001) (‘Considering the fact that the appellant was charged with the capital offense of killing a police officer, along with overpowering, kidnapping, and beating two law-enforcement officers and shooting a third officer, we conclude that allowing an “additional” number of law-enforcement officers to be seated in the courtroom was not an abuse of the trial court’s discretion. No plain error occurred in this regard.’).”
Jackson, 169 So.3d at 105 (opinion on return to remand).
The State asserted in its answer to Spencer’s second amended petition that “Spencer does not set forth facts to support his claim that there was a prejudicial atmosphere during his trial nor does Spencer allege that he was prejudiced by this atmosphere, as is required by Strickland v. Washington, 466 U.S. 668 (1984).” (C. 860.) This Court agrees. Not only did Spencer fail to plead how many and when uniformed officers were present in the courtroom, he failed to plead how he was prejudiced by the presence of those uniformed police officers. Spencer failed to plead facts, such as those discussed in Jackson, that would entitle him to relief on this claim. Thus, the circuit court correctly summarily dismissed, this claim pursuant to Rule 32.6(b), Ala. R.Crim. P.
2.
Spencer next argues that his trial counsel was ineffective for failing to object when members of the victims’ families, during trial, wore items of clothing or buttons depicting photographs of the deceased officers.
*590 The circuit court stated the following concerning this claim:
“While Spencer alleges that family members were wearing items with the victims’ pictures on them, Spencer does not identify when this actually occurred during the trial. In addition, once again, this is a matter within the judge’s knowledge,' Because this claim is not specifically pleaded and because, this claim is without merit, Spencer’s request for an evidentiary hearing on this claim is denied.”
(C. 890
Spencer failed to plead when the alleged instances occurred or even if they occurred in the courtroom. Spencer also failed to plead any specific prejudice in regard to this claim, and he failed to identify any juror who was prejudiced based on his or her observation of a spectator’s clothing. Spencer merely pleaded the following regarding the prejudice prong of the Striak-lond test: “Spencer was ■ prejudiced because, had counsel objected when these spectator victim impact gestures occurred, the Court would have granted the objection and the outcome of [the] trial would have been different.” (C. 610.) Spencer’s “bare allegation” of prejudice was not sufficient to satisfy the pleading requirements of Rule 32.6(b), Ala. R.Crim. P. Thus, this claim was correctly summarily dismissed.
Moreover, the record of Spencer’s trial shows that the following discussion occurred at the beginning of voir dire examination:
“The Court: [A]ny buttons T-shirts—I mean I’ve had people come up here with T-shirts with the victims’ pictures on it, slogans and things, none of that is going to be allowed in the courtroom....
“[Defense counsel]: Your Honor has ruled to preclude the T-shirts and the badges?
“The Court: Yes.”
(Trial R. 246-47.) The trial court specifically held that any clothing or buttons bearing the victims’ pictures would not be allowed in the courtroom.
This claim was correctly summarily dismissed because it was insufficiently pleaded and because it failed to state a material issue of fact or law that would entitle Spencer to relief. See Rule 32.6(b), Ala. R.Crim. P., and Rule 32.7(d), Ala. R.Crim, P.
3.,
Spencer next argues that his “trial counsel unreasonably contributed to the prejudicial atmosphere which pervaded his trial and, in doing so, undermined his ability to decide for himself whether to testify.” (Spencer’s brief, at 24.) Specifically, Spencer pleaded that his attorney informed the media before trial that Spencer was going to plead self-defense and that this comment prejudiced the prospective jurors.
The circuit court stated the following concerning this claim:
“While Spencer alleges that the jury foreman responded to a question on the jury questionnaire that he had heard or read that Spencer had killed three officers and that he said it was self-defense, there is nothing that indicates he heard this from Spencer’s attorney the weekend before the trial. Moreover, there is no indication that any potential juror was tainted by defense counsel’s statements prior to trial or that they were aware that Spencer would actually take the stand and testify in his case. Moreover, it is clear from the record that counsel made the strategic decision to argue that Spencer acted in self-defense and knew that Spencer would have to testify to present this defense. . This defense was consistent with Spencer’s statement to the police that he was act *591 ing -in self-defense when he shot the officers. Further, Spencer has not pleadfed] how the outcome of his trial would have been different - had counsel not told the media that Spencer would testify in support of claims that he was acting in self-defense.. The evidence was overwhelming that Spencer shot and killed the three officers, including the fact that Spencer confessed to shooting Officer Carlos Owen, Officer Harley Chisolm, and Officer Rob Bennett.
“Not only is this claim insufficiently pleaded, it also fails to present a material issue or fact of law. Rule 32.7(d), Ala. R.Crim. P.”
(C. 89-90.)
Spencer failed to plead that any specific juror was prejudiced based on counsel’s pretrial comments—he merely pleaded that jurors “were aware” of the media coverage. Spencer made a general claim of prejudice; therefore, this claim was correctly summarily dismissed because it was insufficiently pleaded. See Rule 32.6(b), Ala. R.Crim. P. = '
4.
Spencer next argues that his trial counsel was ineffective for failing to move for a change of venue. Specifically, Spencer argues that the media coverage surrounding the case saturated the community to such an' extent that prejudice was presumed and that his trial - counsel was ineffective for failing to move for a change of venue.
The circuit court stated the following concerning this claim:
“While it is true that Spencer sets forth dates of newspaper articles and quotes from some of these articles, none of the quotes show that the articles were not correct factually or that the articles were sensational. In addition, Spencer has not set forth with any specificity that an actual or identifiable prejudice occurred in his jury. Of the five jurors who were questioned during voir dire about the publicity, only one had a fixed ■opinion about Spencer’s guilt and this juror was successfully challenged for ' cause. Spencer has not plead[ed] in his second’amended Rule 32 petition that a pattern of deep and bitter prejudice existed in the community due to the pretrial publicity or that there was a connection between the publicity generated and the existence of actual jury prejudice. Spurgeon v. State, 560 So.2d 1116 (Ala.Crim.App.1989); Brooks v. State, 520 So.2d 195 (Ala.Crim.App.1987). In fact, Spencer has not identified one juror who was prejudiced by the pre-trial publicity.”
(C. 90-91.)
- This claim was correctly summarily dismissed because. ;Spencer failed to plead how he was prejudiced; i.e., he failed to identify any juror who was biased based on the pretrial publicity. See Moody v. State, 95 So.3d 827, 845 (Ala.Crim.App.2012). As this Court recently stated when reviewing a similar claim:
“Although Mashburn made a bare allegation that there -were ‘numerous’ newspaper articles regarding the crimes and the trial, he failed to plead any facts regarding the nature of the articles that would indicate that the articles were biased or prejudicial. He also asserted that the newspaper articles ‘saturated the community with information,’ but failed to allege any specific facts in support of this conclusory statement. In addition, Mashburn made a bare assertion that ‘a majority’ of the venire had heard about the case, but he failed to allege how many prospective jurors had actually heard about the case and he did not identify a single juror who sat on his jury who had read or heard about the *592 case. Contrary to Mashburris contention, ‘the existence of widespread publicity does not require a change of venue.’ McGahee v. State, 885 So.2d 191, 211 (Ala.Crim.App.2003). Because Mash-burn failed to allege sufficient facts in his petition indicating a reasonable probability that a change of venue would .have been granted had counsel filed a motion requesting a change of venue, he failed to plead sufficient facts indicating that his trial counsel were ineffective for ,not moving for a change of venue. Therefore, summary dismissal of this claim of ineffective assistance of counsel was proper.”
Mashburn v. State, 148 So.3d 1094, 1129-30 (Ala.Crim.App.2013). “This fact—that the circuit judge had personal knowledge of the answers the veniremembers gave during voir dire regarding media exposure—also supports the circuit court’s summary dismissal of this claim.” Yeomans v. State, 195 So.3d 1018, 1033 (Ala.Crim.App.2013).
Furthermore, in Luong v. State, 199 So.3d 139 (Ala.2014), the Alabama Supreme Court addressed Luong’s claim that prejudice was presumed because the community was saturated with pretrial publicity surrounding the murder of Luong’s four children. The Supreme Court noted the high threshold that is necessary to satisfy the “presumed prejudice” standard. The Court stated, in part:
“[T]he record in this- case does not establish that bias and prejudice permeated the Mobile community at the time of Luong’s trial. Although the facts surrounding the offenses in this ease are inflammatory, no evidence indicates that the community demanded Luong’s arrest or that an underlying bias against Luong existed at the time of trial.”
199 So.3d at 150.
Here, Spencer pleaded the following in regard to this claim:
“From the day of the shootings, Jefferson County media outlets extensively covered this case. Mr. Spencer’s arrest was covered on live television, his confession was made public, as was every step of counsel’s preparation for trial. Given the limits placed on the undersigned’s ability to subpoena materials until this petition is filed, there is no way of knowing the exact extent of television and radio coverage of the case. However, the print-media coverage is indicative of the massive coverage. A single newspaper, The Birmingham News, carried innumerable stories on Mr. Spencer’s case, from the date of the shootings on June 17, 2004, to the start of trial on June 13, 2005. The media coverage as a whole carried lurid details about the case, long before any juror heard evidence in' court, presented critical pieces of information before the court was in a position to rule on admissibility, exposed potential jurors to both parties’ cases before jurors were selected, and forced the defense into making a series of statements ‘to even the playing field’ which framed their entire case before the jury was even empaneled.”
(C. 187-88.) .
Because Spencer did not plead sufficient facts to show that he would have been entitled to a change of venue he failed to plead the “full facts” that would entitle him to relief. See Rule 32.6(b), Ala. R.Crim. P., and Ex parte Beckwoith, supra. Therefore, this claim was correctly summarily dismissed. See Rule 32.7(d), Ala. R.Crim. P.
B.
Spencer next argues that his trial counsel was ineffective during the jury-selection process. He makes several different arguments in-support of this claim.
*593 1.
First, Spencer argues that his trial counsel was ineffective for failing to object when veniremembers '“were likely to see Mr. Spencer being escorted out ... handcuffed and possibly shackled.” (C. 195) (emphasis added).
The circuit court made the following findings concerning this claim:
“Spencer does not allege or specify that any person who actually served, on his jury saw him in handcuffs. This Court took great pains to ensure that [Spencer] was not seen by potential jurors during the trial and during jury selection. [Spencer] was brought to the Courtroom each day by a jail elevator which opens to a small holding room where the shackles were removed prior to [Spencer] entering the Courtroom. The door from the holding area looks just like any other door in the courtroom so the jury doesn’t know where it leads to. This claim is not sufficiently pleaded, therefore, Spencer’s request for an evidentiary hearing on this claim is denied.”
(C. 91-92.)
Spencer made only a bare claim of “possible prejudice” and failed to plead sufficient facts regarding the prejudice prong of the Strickland test—he failed to identify any jurors who observed him in handcuffs. See Rule 32.6(b), Ala. R.Crim. P. This claim was correctly summarily dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P.
2.
Second, Spencer argues that his trial counsel was ineffective during voir dire because counsel failed to inquire into a discussion among three prospective jurors concerning Spencer’s guilt.
The circuit court stated the following concerning this claim:
“While Spencer identifies a juror who recalls a discussion between white jurors who wanted to impose the death penalty because Spencer killed three white police officers, he does not identify the jurors who were engaged in this conversation. In addition, Spencer does not identify specifically how this alleged bias changed the outcome of the guilt phase of his trial. This is especially necessary where the evidence of Spencer’s guilt is overwhelming and where ■ Spencer. has not specifically plead[ed] how he was prejudiced by his attorney’s failure to question potential jurors about racial bias. Because this claim- is not specifically pleaded, Spencer’s request for an evidentiary hearing on this claim is denied.”
(C. 92.)
When pleading a claim that a prospective juror was biased, the petitioner must plead the identity of the allegedly biased prospective juror.
“The circuit court correctly summarily dismissed this claim because Washington failed to identify specific jurors by name; he failed to plead what should have been done during voir dire examination; and he failed to plead how he was prejudiced by counsel’s performance during the voir dire examination. See Rule 32.6(b), Ala. R.Crim. P.”
Washington v. State, 95 So.3d 26, 64 (Ala.Crim.App.2012).
Spencer failed to plead the identity of the allegedly, biased prospective jurors; therefore, according to Washington, this claim was correctly summarily dismissed because Spencer failed to plead sufficient facts that would entitle him to relief. See Rule 32.6(b), Ala. R.Crim. P.
3.
Third, Spencer argues that his trial counsel was ineffective for failing to ask *594 follow-up questions to several prospective jurors who indicated biases during the voir dire, examination. Specifically, Spencer pleaded that his trial counsel failed to ask follow-up questions of prospective jurors R.H., J.J., and J.W. after they indicated biases against Spencer.
The circuit court stated the following concerning this claim:
“Jurors [R.H.], [J.J.] and [J.W.] unequivocally indicated during voir dire that they would base their verdicts on the evidence presented , during trial and would follow the trial court’s instructions and would not base their verdicts on what they • had read about the crime. Counsel were not ineffective for failing to conduct a more thorough voir dire on these jurors because they stated that they could set aside their opinions and follow the trial judge’s instructions. Because no material issue of fact "or law exists concerning this claim Spencer’s request for an"" evidentiary hearing is denied.”
(C.R.92-9S.)
Spencer pleaded in his postconviction petition that prospective juror R.H. stated during voir dire examination that he had a fixed opinion about Spencer’s guilt. However, a review of the record of the voir dire examination shows that R.H. said that he did not have a fixed opinion about Spencer’s guilt and that he could follow the court’s instructions on the case. (Trial R, 547-48.) Spencer also pleaded that prospective juror J.J. was biased because she said that she was leaning 70% toward guilt, that she was related to a police chief, and that she was familiar with the facts of the case. However, J.J. indicated that she could render a decision based on the jury instructions. Spencer further pleaded that prospective juror J.W. indicated that he had read extensively about the case. However, the record shows that trial counsel moved that J.W. be removed for cause based on his answers to voir dire questions but that that motion was denied. (Trial R. 569.)
More importantly, Spencer failed to plead, and could not show, any prejudice in regard to his trial counsel’s failure to more adequately question prospective jurors R.H., J.J., and J.W. Indeed, the trial record shows that none of the challenged prospective jurors served on Spencer’s jury. (Trial R. 628; Trial C. 3251-3404.) “[T]he Alabama Supreme Court has held that the failure to remove a juror for cause is harmless when that juror is removed by the use of a peremptory strike. Bethea v. Springhill Mem’l Hosp., 833 So.2d 1 (Ala.2002).” Pace v. State, 904 So.2d 331, 341 (Ala.Crim.App.2003). “Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee v. State, 44 So.3d 1145, 1173 (Ala.Crim.App.2009).
The circuit court correctly found that this claim was due to be summarily dismissed because no material issue of fact or law existed that would entitle Spencer to relief. See Rule 32.7(d), Ala. R.Crim. P.
4.
Spencer next argues that his trial counsel was ineffective for failing to adequately challenge veniremembers who expressed fixed opinions in favor of the death penalty. In his second amended petition, Spencer identifies only one prospective juror by name.[3] Spencer pleaded that counsel was ineffective for failing to adequately question prospective juror K.G. because *595 K.G. indicated that if Spencer were found guilty he would vote for the death penalty.
The circuit court stated the following concerning this claim:
“Spencer requests an evidentiary hearing on his claim that counsel were ineffective because they failed to challenge for cause prospective juror [KG.]. This request is denied because the claim is insufficiently pleaded because, with one exception, Spencer does not identify which jurors had views on the death penalty that substantially impaired their ability to be fair jurors.
“In addition, while juror [K.G.] indicated that he was in favor of the death penalty the trial court then explained the process that would occur during the penalty phase of the trial and - asked juror [K.G.] whether he could decide what punishment to impose based on the process of weighing aggravating and mitigating circumstances. Juror [K.G.] responded that he could base his decision using this process. There is no evidence in the record that juror [KG.’s] views on the death penalty ‘would prevent or substantially impair’ the performance of his duties as a juror in accordance with his instructions and his oath. Spencer’s request for an eviden-tiary hearing on this claim is denied because no material issue of fact or law exists which would entitle Spencer to relief.”
(C. 94.) Spencer failed to plead any prejudice in regard to prospective juror KG. Indeed, the trial record shows that prospective juror KG. did-not serve on Spencer’s jury. (Trial R. 628; Trial C. 3251-3404.) In affirming a circuit court’s summary dismissal of a similar claim in a postconviction petition, this Court in Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009), stated:
“The circuit court correctly found that this claim was not sufficiently pleaded because Lee failed to plead how he was prejudiced by counsel’s failure to use his peremptory strikes to remove these three jurors. See Beckworth v. State, [190 So.3d 527 (Ala.Crim.App.2009) ]. Lee did not allege that any of the jurors were actually biased against him and, unlike [State v.] Terry, [601 So.2d 161 (Ala.Crim.App.1992),] the record of the voir dire examination shows that the three jurors indicated that they had no bias against Lee nor were they biased in favor of the State. As the Mississippi Supreme Court stated in Le v. State, 913 So.2d 913 (Miss.2005):
“ ‘The Fifth Circuit Court of Appeals considers an attorney’s actions during voir dire to be a matter of trial strategy, which “cannot be the basis for a claim of ineffective assistance of counsel unless counsel’s tactics are shown to be ‘so ill chosen that it permeates that entire trial with obvious unfairness.’ ” Teague v, Scott, 60 F.3d 1167, 1172 (5th Cir.1995) (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir.1983)). Federal courts have held that an attorney’s failure to exercise peremptory challenges does not give rise to a claim of ineffective assistance of counsel absent a showing that the defendant was' prejudiced by the counsel’s failure to exercise the challenges. United States v. Taylor, 832 F.2d 1187 (10th Cir.1987), See also Mattheson v. King, 751 F.2d 1432, 1438 (5th Cir.1985).
“913 So.2d at 954.”
Lee, 44 So.3d at 1164-65.
This claim was correctly summarily dismissed because Spencer failed to meet his burden to plead the full factual basis of his *596 claim. See Rules 32.6(b) and 82.7(d), Ala. R.Crim. P. '
5.
Spencer next argues that his trial counsel was ineffective because he failed to object to the pretrial death qualifications of the prospective jurors. Specifically, Spencer argues that his trial counsel failed to "object when prospective jurors E.A. and C.D. were removed for cause based on their opposition to the death penalty.
.The circuit court stated the following concerning this claim:
■ “Spencer [is not] entitled to an eviden-tiary hearing on his claim that his attorneys should have questioned prospective jurors [E.A.] and [C.D.] more thoroughly concerning their views on the death penalty. Both jurors were questioned extensively about their views "on the death penalty and both stated that they "could not impose the death penalty. There was nothing more counsel could "have done. The oppbsition of these jurors to the death penalty would have prevented or substantially impaired their ability to perform their duties as jurors. No material issue of fact or law exists concerning this claim; therefore, Spencer’s request for an evidentiary hearing is denied.”
(C. 70-71.)
The circuit court did not summarily dismiss this claim based on the insufficiency of the pleadings; instead, the circuit court found that, based on thq record, this claim presented no material issue of fact or law that would entitle Spencer to relief.. See Rule 32.7(d), Ala. R.Crim. P. This Court has reviewed the transcript of the voir dire examination and agrees. Prospective jurors E.A. and C.D. were properly excused for cause after they indicated during voir dire that they- were opposed to the death ■penalty. ’Any further action by counsel would not have changed the prospective jurors’ responses.
The circuit court correctly found that this claim was due to be summarily dismissed because there was no material issue of fact or law that would entitle Spencer to relief. See Rule 32.7(d), Ala. R.Crim. P.
C.
Spencer next argues that his trial counsel was ineffective at the guilt phase of his capital-murder trial. He makes several different arguments in support of this contention.
1.
First, Spencer argues that his trial counsel was ineffective for failing to investigate and to gather evidence to support counsel’s theory of the case. Specifically, Spencer pleaded that his trial counsel was ineffective for failing to present a viable defense based on provocation manslaughter because counsel failed to present the testimony of Tyran “Bubba” Cooper and Markesha Williams.
Attached to Spencer’s postconviction petition was an affidavit executed by Cooper. Cooper stated that he paid two Birmingham police officers so that police would not interfere with the drug business that he was conducting at the location where the officers were killed. According to Cooper, the officers threatened him when he stopped making payments. Spencer did not plead in his amended petition, nor did Cooper state in his affidavit, that he was present or witnessed the shootings. Spencer also pleaded that Williams witnessed Cooper hand a police officer a bundle of money several days before the shootings.
“Alabama courts have, in fact, recognized three legal provocations sufficient to reduce murder to manslaughter: (1) *597 when the accused witnesses his or her spouse in the act of adultery; (2) when the accused is assaulted or faced with an imminent assault on himself; and (3) when the accused witnesses an assault on a family member or close relative.”
Rogers v. State, 819 So.2d 643, 662 (Ala.Crim.App.2001).
In discussing what constitutes “imminent assault” in regard to provocation manslaughter, this Court has stated:
“““Mere words, no matter how insulting, never reduce a homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is, the unpremeditated result of passion—heated blood—caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.’ ...” Reeves v. State, 186 Ala. 14, 65 So. 160, 161 [ (1914) ].’ Easley v. State, 246 Ala. 359, at 362, 20 So.2d 519, 522 (Ala.1944). Thus, the mere appearance of imminent assault may be sufficient to arouse heat of passion.”
Cox v. State, 500 So.2d 1296, 1298 (Ala.Crim.App.1986). “What constitutes legal provocation is left to the trial judge’s interpretation.” Gray v. State, 574 So.2d 1010, 1011 (Ala.Crim.App.1990) (citing Shultz v. State, 480 So.2d 73, 76 (Ala.Crim.App.1985)).
Here, the circuit court stated the following concerning this claim:
“Spencer contends that the testimony of Tyran Cooper and Markesha Williams would have shown that the officers were not at the house for a lawful purpose but were there for the unlawful purpose of bribe—taking and retaliation for unpaid bribes against Mr. Cooper and would have supported a defense that he was assaulted or faced an imminent assault on himself.
“Spencer’s request is denied because no ‘material issue of fact or law exists’ which would entitle him to relief. Rule 32.7(d), Ala. R.Crim. P. While it is true that Spencer has pleaded more facts to support his claim that his attorney should have presented a provocation manslaughter defense, the facts pleaded do not support this defense. The Court of Criminal Appeals discussed the law concerning this defense on direct appeal, as follows:
‘“Section 13A-6-3, Ala.Code 1975, states, in pertinent part:
“‘“(a) A person commits the crime of manslaughter if:
[[Image here]]
“ ‘ “(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.”
“ ‘(emphasis added.) It is well settled that even where the defendant commits the killing due to a sudden heat of passion, an instruction on manslaughter is properly refused where there is no evidence that that sudden heat of passion was caused by a provocation recognized by law. Harrison *598 v. State, 580 So.2d 73, 74 (Ala.Crim.App.1991).
“‘“Alabama courts have, in fact, recognized three legal provocations sufficient to reduce murder to manslaughter: (1) when the accused witnesses his or her spouse in the act of adultery; (2) when the accused is assaulted or faced with an imminent assault on himself; and (3) when the accused witnesses an assault on a family member or close relative.”
“ ‘Rogers v. State, 819 So.2d 643, 662 (Ala.Crim.App.2001).’
“Spencer v. State, 58 So.3d 215, 244-45 (Ala.Crim.App.2008). The Court of Criminal Appeals then found that the evidence presented by Spencer at trial was insufficient to support a heat-of-passion manslaughter defense, as follows:
“ ‘Here, based on the evidence supporting Spencer’s theory of events, the events leading up to the shootings, even if creating a sense of passion or mental or emotional imbalance, did not constitute a provocation. It is legally recognized apparent that neither the first (accused witnesses his spouse committing adultery) nor the third (accused witnesses an assault on a family member or close relative) legally recognized provocation is applicable in this case. As to whether the second legally recognized provocation (whether Spencer was assaulted or faced with an imminent assault on himself) is applicable under the facts of this case, we have reviewed the evidence and answer that question in the negative.
“‘Even assuming, without finding as true, Spencer’s contentions that the officers made remarks during the earlier encounter that caused Spencer to fear that the officers would hurt or kill him, those comments were made hours before the final encounter where the officers were killed. Additionally, the initial arguments were between Woods and officers; Spencer willingly joined in the verbal jousting, and again continued his verbal sparring with a second officer even though the first officer had, according to Spencer, made threatening comments. Further, the first two officers Spencer encountered during the final and fatal engagement were shot repeatedly in the back while attempting to exercise a lawful arrest on Woods. The evidence also indicates that Spencer made statements following the earlier encounters with the officers that if the officers returned he would ‘bust ’em’ (R. 913), and that ‘they was gonna get’ the officers if they returned. (R. 1638.) Additionally, Spencer, knowing that the officers had returned because he looked out the window, exacerbated the situation by intentionally grabbing his loaded SKS assault rifle and proceeding toward the commotion in the kitchen. This evidence further militates against any contention that the murders were committed in a sudden passion and thus warranted such a jury instruction. Because the evidence did not support a charge on heat-of-passion manslaughter, the trial court properly rejected Spencer’s request for such a charge.’
“Id., at 245.
“Tyran Cooper’s testimony does nothing to change the facts set forth above. It does not show that Spencer was assaulted or faced with an imminent assault on himself. As the Court of Criminal Appeals found, Spencer was the aggressor—not the officers. As the Court of Criminal Appeals also noted, *599 Spencer shot the first two officers in the back as they were lawfully arresting Woods, he made statements earlier in the day that he would get the officers if they returned, and when Spencer saw that the officers had returned, he picked up his SKS assault rifle and sought out the officers. Spencer, 58 So.3d at 245. The same is true of Markesha Williams’s testimony. As the Court of Criminal Appeals found, the words between Spencer and the officers occurred hours between the initial visit from the officers and their attempt to serve the arrest warrant on Woods. In addition, the earlier confrontation was between Woods and the officers and did not involve Spencer. None of the evidence Spencer now alleges should have been presented would have changed these facts.
“The fact that Tyran Cooper was allegedly in a dispute with the officers concerning bribes does not show that Spencer was assaulted or faced with an imminent assault when the officers entered the house to arrest Woods. Spencer has not shown that counsel was ineffective because he failed to find and present more evidence to support a provocation manslaughter defense, Spencer is not entitled to an evidentiary hearing on this claim because no ‘material issue of fact or law exists’ which would entitle him to relief. Rule 32.7(d), Ala. R.Crim. P.”
(C., 71-75.)
The evidence that Spencer pleaded should have been presented at trial—evidence of an alleged dispute that Nathaniel Woods was having with police officers— would not have supported a jury instruction on provocation manslaughter. Spencer did not plead in his second amended petition that he was in imminent threat of an assault at the time of the shootings. Spencer ignores the critical and undisputed evidence that two of the- police officers were shot in the back with their guns still in their holsters. Indeed, .Spencer’s own testimony at trial .showed that the officers were talking with Woods at the time of the shootings.
This claim was correctly summarily dismissed 'pursuant to Rule 32.7(d), Ala. R.Crim. P., because, assuming that all the pleaded facts were true, the claim failed to state any material issue of fact or law that would entitle Spencer to relief.
2.
Spencer also argues that, his trial counsel was ineffective for failing to obtain and to present expert testimony on the defense of voluntary intoxication. Specifically, he argues that he should have had an expert testify about the effects of alcohol when mixed with other drugs.
The circuit court stated the following concerning this claim:
“For a jury .to consider the issue of whether a defendant’s level of intoxication rises to the level to negate a requisite intent, there must be sufficient evidence to support a reasonable theory of an extreme level of intoxication. See Ex parte McWhorter, 781 So.2d 330, 342-343 [ (Ala.2000) ]. A jury typically must consider whether a defendant was so intoxicated, at the time of the charged offense, that his mental state amounted to insanity, therefore, finding that his extreme intoxication negated the requisite intent, as charged in the indictment. See Crosslin v. State, 446 So.2d 675, 681-682 (Ala.Crim.App.1983).
“Spencer argues that an expert should have testified that the effects of Seroqu-el and cocaine on Spencer’s brain would have left him confused and unable to process information logically. In addition, Spencer argues that disorientation, agitation, aggression, hallucinations, and *600 paranoia have been reported with Queti-apine use. Finally, Spencer asserts that ‘[c]hronic cocaine abuse is known to engender panic, anxiety, and irrational fears.’ This evidence is insufficient to show that, at the time he murdered the three police officers, Spencer was intoxicated to the point of insanity. In fact, Spencer does not even allege in the Rule 32 petition that he was suffering from any of these side effects when he murdered the three police officers—just that these are possible side effects from these drugs. Counsel’s performance, therefore, was not deficient because they failed to present this evidence at Spencer’s trial.
“In addition, Spencer’s claim that he was prejudiced by counsel’s failure to present this expert testimony does not present a material issue of fact or law because his actions during this crime show that he was not intoxicated to the point of insanity. When Spencer heard a commotion outside, he went to the bedroom window to see what was going on. When Spencer saw the officers in the apartment, he started shooting and did not stop shooting until all the officers were down. He walked to the back door of the apartment and saw Officer Collins. He shot at Officer Collins to make sure that he was not a threat to him. When he left the apartment, he went to a house down the street where he hid in the attic to avoid the police. Spencer’s actions during the murders of the police officers clearly reveal that he was not functioning as someone who was intoxicated to the point of insanity but as someone who understood what he was doing and was aware of the consequences of his actions. Because Spencer’s actions during the murders show that he was not intoxicated to the point of insanity, he cannot prove that he was prejudiced by counsel’s failure to present expert evidence concerning his cocaine, alcohol, and pill use.”
(C. 76-77.)
This Court has held that a petitioner fails to plead sufficient facts regarding a claim that counsel failed to present an intoxication defense when he makes only a bare allegation that the petitioner was intoxicated at the time of the offense. As this Court has stated: “[The appellant] failed to allege how much he had to drink the night of the crime, how long before the crime he had been drinking, or any fact indicating that his alleged intoxication amounted to insanity.” Connally v. State, 33 So.3d 618, 623 (Ala.Crim.App.2007).
“[The appellant] failed to plead sufficient facts to indicate that voluntary intoxication would have been a viable defense or that he would have been entitled to a jury instructions on voluntary intoxication ...; thus, he failed to plead sufficient facts indicating that his trial counsel were ineffective in this regard.”
Mashburn v. State, 148 So.3d 1094, 1126-27 (Ala.Crim.App.2013). This claim was insufficiently pleaded.
Moreover, recently in Wiggins v. State, 193 So.3d 766 (Ala.Crim.App.2014), this Court stated:
“Some courts have found that expert testimony on the effects of alcohol is not necessary because it concerns an issue within the common knowledge of a juror. As the Washington Court of Appeals stated in State v. Thomas, 123 Wash. App. 771, 98 P.3d 1258 (2004):
“ ‘A voluntary intoxication defense allows the jury to consider “evidence of intoxication” to determine whether the defendant acted with the requisite intent. But unlike diminished capacity, it is not necessary to present expert testimony to support an involuntary intoxication defense. The effects of *601 alcohol are commonly known and jurors can draw reasonable inferences from testimony about ' alcohol use. State v. Kruger, 116 Wash.App. 685, 692-93, 67 P.3d 1147, rev. denied 150 Wash.2d 1024, 81 P.3d 120 (2003); State v. Smissaert, 41 Wash.App. 813, 815, 706 P.2d 647 (1985).’
“123 Wash.App. at 781-82, 98 P.3d at 1263. See also State v. Frank, 364 N.W.2d 398, 400 (Minn.1985) (‘Most jurors have some experience with the effects of excessive alcohol consumption and therefore, in an ordinary case, will not need expert assistance.’).”
193 So.3d at 802.
Furthermore, the trial record shows that trial counsel filed a pretrial motion for funds to hire a pharmacologist. (Trial C. 380.) In the motion, counsel stated:
“[DJefendant needs to have an expert testify at trial as to whether or not habitual use of cocaine may lead to episodes of paranoia that create a fear that has no actual basis. This testimony may be used to negate the State’s argument of the specific intent to kill by the Defendant.”
(Trial C. 380.) That motion was granted. Postconviction counsel admitted in the second amended petition that trial counsel had hired Dr. Shannon Lee, a psychiatric pharmacy specialist, “to investigate and prepare material for a ‘cocaine' paranoia’ defense. For some reason, counsel did not pursue this line of inquiry and did not present any evidence of this defense at trial.” (C. 659.)
“[TJrial counsel had no reason to retain another psychologist to dispute the first expert’s findings. ‘A postconvictipn petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial.’ State v. Combs, 100 Ohio App.3d 90, 103, 652 N.E.2d 205, 213 (1994). See also State v. Frogge, 359 N.C. 228, 244-45, 607 S.E.2d 627, 637 (2005). ‘Counsel is not ineffective for failing to shop around for additional experts.’ Smulls v. State, 71 S.W.3d 138, 156 (Mo.2002). ‘Counsel is not required to “continue looking for experts just because the one. he has consulted gave, an unfavorable opinion.” Sidebottom v. Delo, 46 F.3d 744, 753 (8th Cir.1995).’ Walls v. Bowersox, 151 F.3d 827, 835 (8th Cir.1998).”
Waldrop v. State, 987 So.2d 1186, 1193 (Ala.Crim.App.2007).
Testimony presented at ■ trial indicated that the night before the shootings Spencer ingested cocaine. Testimony further indicated that the next morning between 9:00 a.m. and 10:00 a.m.[4] Spencer drank one beer, took one Seroquel pill, and ingested a small amount of cocaine.[5] Spencer, 58 So.3d at 256. The circuit court found in its amended sentencing order that “‘more than sufficient time had elapsed between the time the last drugs or alcohol were ingested and the shooting[s].’” 58 So.3d at 256. There was no evidence at trial indicating that Spencer’s intoxication at the time of the shootings rose to such a level that it amounted to insanity. See Connolly v. State, supra.
For the reasons stated above, this claim was correctly summarily dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P.
3.
Spencer next argues that counsel was ineffective for failing to have him evaluated by a competent mental-health expert. Specifically, Spencer pleaded in his *602 second amended petition that counsel should have hired Dr. Donna Schwartiz-Watts—a psychiatrist—to evaluate Spencer.
Spencer pleaded that Dr. Schwartiz-Watts evaluated Spencer for the posteón-viction proceedings and that it was her opinion that Spencer suffered from post-traumatic stress disorder and that he “demonstrates super hyper-vigilance ... and an active startle response.” (C. 671.) Spencer also pleaded that Dr. Schwartiz-Watts found that Spencer had brain injuries from his childhood.
The circuit court stated the following concerning this claim:
“Spencer fails to explain how the guilt phase of his trial would have been different had he presented the evidence that he suffers. from post-traumatic stress disorder or is brain damaged. The evidence is overwhelming that Spencer indicated that he would kill the officers if they returned to the apartment and that he followed through on this threat. No material issue of fact or law exists concerning this claim, therefore, the request for an evidentiary hearing is denied.”
(C. 94-95.)
The State asserts that this claim was not sufficiently pleaded because Spencer did not “proffer any specific facts that would show hów his post-traumatic stress syndrome or brain damage caused him to kill the victim[s].” (C. 878.) This Court agrees. Spencer also failed to plead how he was prejudiced by this expert’s failure to testify. Therefore, this claim was correctly summarily dismissed pursuant to Rule 32.6(b), Ala. R.Grim. P.
Moreover, the trial record shows that trial counsel moved that Spencer be evaluated to determine his competency to stand trial and that Spencer was evaluated by Dr. Kimberly Ackerson, a forensic psychologist. The record also shows that trial counsel moved for funds for a mitigation expert and that that motion was granted. (C. 1582.) Dr. Allen E. Shealy, a psychologist, conducted a psychological evaluation of Spencer, administered intelligence tests to. Spencer, administered the “Bender-Gestalt” screening for gross brain damage to Spencer, examined Spencer’s medical records, and conducted numerous interviews. (Trial C. 3468.) Dr. Shealy compiled a report, which was admitted at the judicial sentencing hearing. In the report, Dr. Shealy stated:
“I found Mr. Spencer to be cognitively intact as indicated by a WAIS-III Verbal IQ of 97 which is in the range of average intelligence, relative to the general U.S. population. He reads at the Grade Level of 10.8. There is no evidence of major brain dysfunction as measured by the Bender-Gestalt, a screening of gross neuropsychological .intactness. These findings are consistent with the conclusions reached by Dr. Ackerson in her psychological evaluation of trial competency. Therefore, his level of intelligence is not considered of mitigating value. Also his medical history including the history of treatment during incarceration provides no evidence of a major mental disorder which might have mitigating value.
“One of the mitigating factors that is present is the absence of a history of previous violent behavior. This is reflected in the absence of arrests for violent offenses and is consistent with reports from collateral sources and with his behavioral history since incarceration at the Jefferson County jail since February '2005. At the time of my evaluation, he was residing in the' general population without violent incidents.
“A second mitigating factor is Mr. Spencer’s social and family history. Even though he grew up with deficits of *603 paternal parenting, according to all reports he has been a devoted father to his two children. In support of this, he was able to provide me with immediate and exact date of birth of both of his. children. Other evidence of positive character traits include reports from his minister at St. Luke’s Baptist Church that he has attended church regularly with his family for most of his life. His pastor has known him for 17 years and further characterizes him as a devoted father and says, ‘He’s a top-of-the-line, superb father. He’s crazy about them (his two children) and they’re. crazy about him.’ He states that Mr. Spencer was active in the Youth Ministry of his church and the pastor has ongoing visitation with Mr. Spencer at the jail.
“A further mitigating factor is ¡ that most of the evidence supports the premise that the offense he is charged with occurred under extreme emotional duress in which the defendant feared for his life. This may have been exacerbated by the influence of drugs that he was under at the time of the offense.”
(Trial C. 3468-69.)
Spencer was evaluated by two mental-health experts before his trial, and trial counsel was privy to Dr. Ackerson’s and Dr. Shealy’s findings. Again,
‘‘[t]rial. counsel had no reason to retain another' psychologist to dispute the first expert’s findings. A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial.’ State, v. Combs, 100 Ohio App.3d 90, 103, 652 N.E.2d 205, 213 (1994). See also State v. Frogge, 359 N.C. 228, 244-45, 607 S.E.2d 627, 637 (2005). ‘Counsel is not ineffective for failing to shop around for additional experts.’ Smulls v. State, 71 S.W.3d 138, 156 (Mo.2002). ‘Counsel is not required to “continue looking for experts just because the one he has consulted gave an unfavorable opinion.” Sidebottom v. Delo, 46 F.3d 744, 753 (8th Cir.1995).’ Walls v. Bowersox, 151 F.3d 827, 835 (8th Cir.1998).”
Waldrop, 987 So.2d at 1193.
Spencer failed to plead the full facts in regard to this claim, and, thus, it was correctly summarily dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P. Moreover, assuming all the pleaded facts are true, there was no material issue of fact or law that would entitle Spencer to relief; therefore, pursuant to Rule 32.7(d), Ala. R.Crim. P., this claim was also due to be summarily dismissed.
4.
Spencer next argues that his trial counsel was ineffective for failing to subpoena Tyran “Bubba” Cooper, who Spencer describes as a key witness. Specifically, he argues that Cooper’s testimony supported convictions for the lesser offense of provocation manslaughter and that counsel was ineffective for failing to ensure that Cooper testified.
The circuit court made the following findings concerning this claim:
“Spencer cannot prove that he was prejudiced because counsel failed to subpoena Tyran Cooper to establish his provocation manslaughter defense. The fact that Tyran Cooper was allegedly in a dispute with the .officers concerning bribes does not show that Spencer was assaulted or faced with an imminent assault when the. officers entered the house to arrest Woods. As the Court of .Criminal Appeals also noted, Spencer .shot the .first two officers in the back as they were lawfully arresting Woods, he made statements earlier in the day that he would get the officers if they returned, apd when Spencer, saw that the *604 officers had returned, he picked up his SKS assault rifle and sought out the officers. Spencer [v. State ], 58 So.3d [215] at 245 [ (Ala.Crim.App.2009) ]. As the Court of Criminal Appeals found, the words between Spencer and the officers occurred hours between the initial visit from the officers and their attempt to serve the arrest warrant on Woods. In addition, the earlier confrontation was between Woods and the officers and did not involve Spencer. Tyran Coo.per’s testimony would not have changed these facts. Spencer is not entitled to an evidentiary hearing on this claim because no 'material issue of fact or law exists’ which would entitle him to relief.”
(C. 77-78.)
The record of Spencer’s trial shows that trial counsel attempted to call Cooper as its last witness. On direct appeal, this Court stated the following facts surrounding this issue:
“In the present case, at approximately 4:45 p.m. on Saturday, June 19, 2005, during the defense’s case, the defense called Cooper as its final witness; however, he was not present. Outside the hearing of the jury, defense counsel informed the trial court that the witness had not been subpoenaed because the witness had told defense counsel ‘on three or four occasions he didn’t need a subpoena.’ (R. 1719.) Defense counsel requested a continuance until 8:30 a.m. the following morning, and the trial court recessed' until 8:30 a.m. the following morning.
“The following morning, defense counsel informed the trial court that Cooper was again not present. Defense counsel averred that a subpoena had been issued on May 17, 2005, to secure the presence of Cooper as a witness at trial. That subpoena was returned unserved on May 23, 2005, because Cooper had not been located. According to defense counsel, an alias was issued on May 25, 2005, but defense counsel was unaware as to whether that subpoena had been served. Defense counsel informed the trial court that he had spoken with Cooper on the telephone the day before; he stated-that Cooper claimed to have been unaware that he was supposed to be in court and that Cooper wanted to speak with his attorney before agreeing to testify at Spencer’s trial. Defense counsel averred that members of Spencer’s family had spoken with Cooper that morning and provided the trial court with the address of the apartment where Cooper was supposedly located at that time.... Cooper had informed the family members that he did not wish to testify at Spencer’s trial. The trial court instructed defense counsel to telephone Cooper at the number they had been given, but that number was the general office number for the apartment complex, rather than the specific apartment where Cooper was allegedly located.
“Defense counsel requested that the trial court issue an attachment to have Cooper picked up and brought to court.”
Spencer, 58 So.3d at 235. Trial counsel then asked the trial court to issue an instanter subpoena to Cooper. After a lengthy discussion, the circuit court declined to delay the trial. (Trial R. 1725-33.)
Attached to Spencer’s postconviction petition is an affidavit executed by Cooper. Cooper states that he openly sold drugs from the apartment where the shooting occurred, that he had an arrangement with police officers whereby he would pay them not to disturb that business, that, before the shootings, he had stopped paying the officers, and that the officers had been coming by the apartment frequently to try to collect money. Cooper did not state, *605 and Spencer does not allege in his postcon-viction petition, that Cooper was present at the time of the shooting. The contents of Cooper’s affidavit did not establish sufficient facts to support the elements of provocation manslaughter.
Assuming all the facts as pleaded in Spencer’s petition are true, “no material issue of fact or law exist[ed] which would entitle [Spéncer] to relief’ on this claim. Rule 32.7(d), Ala. R.Crim, P. This claim was correctly summarily dismissed. '
5.
Spencer next argues that his counsel was ineffective for failing to object to what he says was the State’s interference with a material witness. Specifically, Spencer pleaded that a detective threatened Cooper against cooperating with Spencer’s trial counsel and warned that he would face a lengthier sentence if he testified at Spencer’s trial.
The circuit court stated the following concerning this claim:
“The facts as pleaded do not entitle Spencer to relief because he cannot prove—with these facts—that he was prejudiced by counsel’s alleged ineffectiveness. As the Court of Criminal Appeals found concerning Cooper’s testimony: ‘[A]s the trial court noted, there was some question as to whether the testimony [of Cooper], as proffered, would have even been admissible. The witness did not see the shootings; moreover, there was no indication that the witness was going to testify as to any specific communications between himself and the accused that would support a self-defense argument.’ Spencer, 58 So.3d 215, 239. In addition, the record clearly shows that Spencer was not acting in self-defense when he murdered Officers Owen, Chisolm, and Bennett and when he attempted to murder Officer Collins; The officers were not involved in any unlawful attempt to arrest Nathaniel Woods. In fact, they informed Woods that they had an arrest warrant for him and that he was under arrest based' on this outstanding warrant. When Woods turned and ran into the apartment, the officers entered the apartment to arrest him. They did not have their guns drawn when they entered the apartment to arrest him. They did not have their guns drawn when Spencer started firing on them. In fact, the officers’ attention was completely on arresting Woods when Spencer began firing the SKS assault rifle at them. There is absolutely nothing in the record that indicates that the officers made Spencer fear for his life when they entered the apartment. Their weapons were not drawn and their attention was focused solely on Woods.
“They never even attempted to approach Spencer., In fact, the officers did not attempt to use any force against Spencer, much less excessive force. Spencer was asleep on the couch when the officers entered the apartment. When Spencer heard a noise, he got up and looked out the bedroom window to see what was happening. He saw Woods and started firing on the officers. Spencer did not stop firing until all of the officers were down. Because Spencer was not acting in self-defense, he was not prejudiced when his attorney failed to present evidence that the State interfered with the testimony of Tyran Cooper.”
(C. 78-80.)
The circuit court’s findings are supported by the record. In his petition, Spencer failed to plead facts that, if true, would establish prejudice under Strickland. See Rule 32.6(b), Ala. R.Crim. P. Accordingly, he failed to meet his burden to plead the full factual basis of his claim *606 and summary dismissal was appropriate. See id.; Rule 82.7(d), Ala. R.Crim. P.
D.
Spencer next argues that his trial counsel was ineffective for failing to object to the trial court’s failure to instruct the jury on voluntary intoxication and on heat-of-passion manslaughter.
The circuit court stated the following concerning this claim:
“Spencer requests an evidentiary hearing on his claims that counsel were ineffective because they did not object when the trial court failed to instruct the jury on voluntary intoxication and manslaughter and failed to request that the trial court charge the jury on heat of passion manslaughter.
“An evidentiary hearing is denied on this claim because the claim is insufficiently pleaded. Spencer alleges that his attorneys were ineffective because they failed to adequately argue for the lesser-included jury instructions of heat of passion manslaughter and intoxication. However, Spencer failed to set forth what evidence would support these instructions.
“Spencer’s request for an evidentiary hearing on these claims is also denied because no material issue of fact or law exists concerning these claims. Spencer raised the underlying claims on direct appeal and the Court of Criminal Appeals rejected the claims. Spencer, 58 So.3d 215, at 230-232, 244-245. In denying relief on Spencer’s claims that the trial court failed to instruct the jury on voluntary intoxication and manslaughter, the Court of Criminal Appeals declined to find .plain error because Spencer ‘failed to establish any evidentiary foundation of intoxication that would warrant an instruction on intoxication.’ Id., at 230-232. This Court recognizes that a finding of no plain error on direct appeal does not foreclose Spencer from arguing that he was prejudiced by his counsel’s failure to object when the trial court failed to give the jury instructions on intoxication and manslaughter. Ex parte Taylor, 10 So.3d 1075, 1078. (Ala.2005), Spencer, however, has not pleaded any facts whatsoever in his Rule 32 petition that would show that his is this ‘rare case.’ The Court of Criminal Appeals also rejected Spencer’s claim that the trial court erred when it refused to charge the jury on heat-of-passion manslaughter and on voluntary intoxication. Id., at 230-232, 244-245. ' The grounds which underlie Spencer’s ineffective' assistance of counsel claim have already been held to be without meiit, and, as a result, this claim should be dismissed as a matter of law and Spencer is not entitled to an evidentiary hearing on' the claim.
“Spencer set forth new facts to establish counsel’s ineffectiveness for failing to request these jury instructions. However, the new facts in support of these defenses'would not entitle Spencer to jury instructions on these defenses. The new facts are insufficient to show that, at the time he murdered the three police officers, Spencer was intoxicated to the point of insanity. In fact, Spencer does not even allege in the Rule 32 petition that he was suffering from any of the side effects from the combination of drugs he was taking when he murdered the three police officers—just that these are possible side effects from these drugs. Counsel’s performance, therefore, was not deficient because they failed to present this evidence to support jury instructions on voluntary intoxication and manslaughter.
• “In addition, Spencer’s claim that he was prejudiced by counsel’s failure to *607 present this evidence and request these jury instructions does not present a material issue of fact or law because his actions during this crime show that he was not intoxicated to the point of insanity. When Spencer heard a commotion outside, he went to the bedroom window to see what was going on. When Spencer saw the officers in the apartment, he started shooting and did not stop shooting until all the officers were down. He walked to the back door of the apartment and saw Officer Collins. He shot at Officer Collins to make sure that he was not a threat to him. When he left the apartment, he went to .a house down the street where he hid in the attic to avoid the police. Spencer’s actions during the murders of the police officers clearly reveal that he was not functioning as someone who was intoxicated to the point of insanity but as someone who understood what he was doing and was aware of the consequences of his actions. Because Spencer’s actions during the murders show that he was not intoxicated to the point of insanity, he cannot prove that he was'prejudiced by counsel’s failure to present evidence concerning his cocaine, alcohol, and pill use and to request jury instructions' to support this defense.
“For the reasons set forth above, Spencer’s request for an evidentiary hearing on these claims is denied because no ‘material issue of fact or law exists’ which would entitle him to relief.”
(C. 96-99.)
1.
Spencer first argues that the circuit court erroneously dismissed his claim that trial counsel was ineffective for failing to object when the circuit court, did not instruct the jury on intoxication as a defense to capital murder. This Court disagrees.
In Smith v. State, 756 So.2d 892 (Ala.Crim.App.1997), this Court recognized:
“ ‘While voluntary intoxication is never a defense to a criminal charge, it may negate the specific intent essential to a malicious killing and reduce it to manslaughter. § 18A-3-2, Code of Alabama (1975) (Commentary). “ ‘When the crime charged involves a specific intent, such as murder, and there is evidence of intoxication, the trial judge should instruct the jury on the lesser included offense of manslaughter.’ Gray v. State, 482 So.2d 1318, 1319 (Ala.Cr.App.1985).” [McNeill] v. State, 496 So.2d 108, 109 (Ala.Cr.App.1986).’
“[McConnico v. State,] 551 So.2d [424,] 426 [ (Ala.Crim.App.1988) ]. However, to negate the specific intent required for a murder conviction, the degree of the accused’s intoxication must amount to insanity.
“ ‘ “In an assault and battery case, voluntary intoxication is no defense, unless- the degree of intoxication amounts to insanity and' renders the accused incapable, of forming an intent to injure. Lister v. State, 437 So.2d 622 (Ala.Cr.App.1983). The same standard is applicable -in homicide cases. Crosslin [v. State, 446 So.2d 675 (Ala.Cr.App.1983) ]. Although intoxication in itself does not constitute a mental disease or defect within the meaning of § 13A-3-1, Code of Alabama 1975, intoxication does include a disturbance of mental or physical capacities resulting from the introduction of any substance into the body. § 13A-3-2. The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to *608 render it impossible for the defendant to form the intent to kill
“ ‘Ex parte Bankhead, 585 So.2d 112, 121 (Ala.1991).’
“Smith v. State, 646 So.2d 704, 712-18 (Ala.Cr.App.1994).”
Smith, 756 So.2d at 906. Further, on direct appeal, this Court explained the following regarding Spencer’s intoxication defense:
“Generally, where there is evidence of intoxication and the charged offense involves specific intent, such as capital murder, the trial court should instruct the jury on the lesser-included offense of manslaughter. See Pilley v. State, 930 So.2d 550, 562 (Ala.Crim.App.2005).
“ ‘ “A charge on intoxication should be given if ‘ “there is an evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt” ’ in the element of intent. Coon v. State, 494 So.2d 184, 187 (Ala.Crim.App.1986) (quoting Government of the Virgin Islands v. Carmona, 422 F.2d 95, 99 n. 6 (3d Cir.1970)). See also People v. Perry, 61 N.Y.2d 849, 473 N.Y.S.2d 966, 966-67, 462 N.E.2d 143, 143-44 (App.1984) (‘[a] charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis’). An accused is entitled to have the jury consider the issue of his intoxication where the evidence of intoxication is conflicting, Owen v. State, 611 So.2d 1126, 1128 (Ala.Crim.App.1992); Crosslin v. State, 446 So.2d 675, 682 (Ala.Crim.App.1983), where the defendant denies the commission of the crime, Coon v. State, 494 So.2d at 187; see Moran v. State, 34 Ala.App. 238, 240, 39 So.2d 419, 421, cert. denied, 252 Ala. 60, 39 So.2d 421 (1949), and where the evidence of intoxication is offered by the State, see Owen v. State, 611 So.2d at 1127-28.”
“ ‘Pilley v. State, 930 So.2d 550, 561-62 (Ala.Crim.App.2005).
“ ‘However, the court should charge on voluntary intoxication only when there is a sufficient evidentiary foundation in the record for a jury to entertain a reasonable doubt as io the element of intent. Ex parte McWhorter, 781 So.2d 330, 342 (Ala.2000). In Pilley, this Court provided guidance as to what evidence would be required to form that evidentiary foundation.
“ ‘ “The Alabama Legislature has defined ‘intoxication’ to include ‘a disturbance of mental or physical capacities resulting from the introduction of any substance into the body.’ § 13A-3-2(c)(l), Ala.Code 1975. Thus, evidence that the defendant ingested alcohol or drugs, standing alone, does not warrant a charge on intoxication. ‘[T]here must be evidence that the ingestion caused a disturbance of the person’s mental or physical capacities and that that mental or physical disturbance existed at the time the offense was committed.’ Lee v. State, 898 So.2d 790, 838 (Ala.Crim.App.2001) (opinion on return to remand), cert. denied, 898 So.2d 874 (Ala.), cert. denied, 543 U.S. 924, 125 S.Ct. 309, 160 L.Ed.2d 222 (2004). See also Maples v. State, 758 So.2d 1, 23 (Ala.Crim.App.), aff'd 758 So.2d 81 (Ala.1999). Such a holding is consistent with this Court’s opinion in Windsor v. State, 683 So.2d 1027, 1037 (Ala.Crim.App.1994), aff'd, 683 *609 So.2d 1042 (Ala.1996), in which we stated:
“ ‘ “ ‘In this case, however, there was no evidence that the appellant was intoxicated. Although there was evidence that the appellant had been drinking beer on the day of the robbery-murder, there was no evidence concerning the quantity of beer he consumed that day at the time of the murder. Evidence that someone was- drinking an alcoholic beverage is not evidence that that person was intoxicated. There was no “reasonable theory” to support an instruction on intoxication because there was no evidence of intoxication. The court did not err in not instructing the jury on intoxication and manslaughter where there was no evidence that the appellant was intoxicated at the time the robbery-murder occurred.’ ”
“ ‘Pilley, 930 So.2d at 563.’
“Harris v. State, 2 So.3d [880, 911 (Ala.Crim.App.2007) ]. Thus, ‘ “[ujnder § 13A-l-9(b), ' Ala.Code 1975, a trial judge is not required to instruct on a lesser-included offense ‘unless there is a rational basis for a verdict convicting the defendant of the included offense.’ ” ’ Harris, 2 So.3d at 912, quoting Pilley, 930 So.2d at 563.
“Here, Spencer presented evidence indicating that he had ingested narcotics and alcohol the night before the shootings and the morning of the shootings. Spencer testified that at the time of the shootings, he had a cocaine habit of ‘about six to seven grams a day.’ (R. 1647.) When asked whether he had taken any narcotics on the morning of the shootings, Spencer stated:
‘“Yes, I did. You know, I had a little'bit of [cocaine] powder left over from the night before. But the night before, we really did a lot of cocaine. And, you know, I probably didn’t go to sleep until about 4 in the morning, you know, just dozed off.’
“(R. 1675-76.) Spencer further stated that sometime'shortly after 9:00 a.m. on the morning of the shootings, he took a Seroquel tablet and drank a beer to help him go to sleep. (R. 1676.) Finally, in an interview with the police after his arrest, Spencer stated that he was ‘high’ at the time of his arrest. However, this evidence alone does not constitute evidence indicating that Spencer was intoxicated at the time of the shootings. Spencer did not claim to be intoxicated at the time of the shootings. There was no evidence concerning the effects, if any, that the amounts of cocaine and other substances allegedly ingested the night before and morning of the shootings had on Spencer at the time of :the shootings. Rather, based on the evidence presented at trial, Spencer failed to establish any evidentiary foundation of intoxication that would warrant an instruction on intoxication. There was simply insufficient evidence from which a jury could have found beyond a reasonable doubt that Spencer was unable to form the requisite intent to commit capital murder, because he was experiencing ‘a disturbance of mental or physical capacities,’ resulting from drug or alcohol use at the time of the murders. Because there was no rational basis for an instruction on voluntary intoxication, we find no plain error in the trial court’s failure to instruct the jury on voluntary intoxication or reckless manslaughter as a lesser-included offense.”
Spencer, 58 So.3d at 231-32.
In his Rule 32 petition, Spencer faded to meet his burden of pleading facts that, if true, would establish that counsel was ineffective for failing to object to the circuit *610 court’s not instructing the jury on intoxication as a defense. Spencer failed to plead the quantity drugs and alcohol he had ingested before the murders. See Connally, 33 So.3d at 622-23 (“Likewise, Connally’s bare allegation that he had been ‘drinking heavily’ on the night of the crirpe was not sufficient to indicate that intoxication would have been a viable defense to the murder charge.... Connally failed to allege how much he had to drink the night of the crime, how long before the crime he had been drinking, or any other facts indicating that his alleged intoxication amounted to insanity.”). Nor did he plead facts that, if.true, would establish that he was intoxicated to the point that he could not form the intent to kill, i.e., that his intoxication rose to the level of insanity. .See Ex parte McWhorter, 781 So.2d 330, 342-43 (Ala.2000) (recognizing that intoxication necessary to negate specific intent must amount to insanity). Consequently, Spencer failed to meet his burden to plead the full factual basis of this claim, and the circuit court correctly dismissed it pursuant to Rules 32.3; 32.6(b); and 32.7(d), Ala. R.Crim. P.
2.
Spencer next argues that the circuit court erroneously dismissed his claim that trial counsel was ineffective for failing to argue adequately that he was entitled to a jury instruction on heat-of-passion manslaughter. This Court disagrees.
On direct appeal, this Court stated the following regarding Spencer’s claim that he was entitled to an instruction on provocation manslaughter:
“Spencer next contends' that the trial court erred in refusing to instruct the jury on heat-of-passion manslaughter as a lesser-included offense.
“Section 13A-6-3, Ala.Code 1975, .states, in pertinent part:
“‘(a) A person commits the crime of manslaughter if:
[[Image here]]
“ ‘(2) He causes the death of another person under circumstances that would, constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.’
“(emphasis added.) It is well settled that even where the defendant commits the killing due to a sudden heat of passion, an instruction on manslaughter is properly refused where there is no evidence, that that sudden heat of passion was caused by a provocation recognized by law. Harrison v. State, 580 So.2d 73, 74 (Ala.Crim.App.1991).
“ ‘ “Alabama courts have, in fact, recognized three legal provocations sufficient to reduce murder to manslaughter: (1) when the accused witnesses his or her spouse in the act of adultery; (2) when the accused is assaulted or faced with an imminent assault on himself; and (3) when the accused witnesses an assault on a family member or close relative.’
“ ‘Rogers v. State, 819 So.2d 643, 662 (Ala.Crim.App.2001).
“““[Section] 13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified .by self-defense.’ Shultz v. State, 480 So.2d 73, 76 (Ala.Crim.App.1985). See also Shiflett v. State, 507 So.2d 1056, (Ala.Crim.App.1987).
“ ‘ “ ‘To constitute adequate legal provocation, it must, be of a nature *611 calculated to influence the passions of the ordinary, reasonable man..,
“‘“Biggs v. State, 441 So.2d 989, 992 (Ala.Crim.App.1983).”
“ ‘Hafford v. State, 674 So.2d 1386, 1390 (Ala.Crim.App.1995).’
“Peraita v. State, 897 So.2d 1161, 1198 (Ala.Crim.App.2003).
“Here, based on the evidence supporting Spencer’s theory of events, the events leading up to the shootings, even if creating a sense of passion dr mental or emotional imbalance, did not constitute a legally recognized provocation. It is apparent that neither the first (accused witnesses his spouse committing adultery) nor the third (accused witnesses an assault on a family member or close relative) legally recognized provocation is applicable in this case. As to whether the second ■ legally recognized provocation (whether Spencer was assaulted or faced with an imminent assault on himself) is applicable under the facts of this case, we have reviewed the evidence and answer that question in the negative. -
“Even assuming, without finding as true, Spencer’s contentions that' the officers made remarks during the earlier encounter that- caused Spencer to fear that the officers would hurt or kill him, those comments were made hours before the final encounter where the officers were killed. Additionally, the initial arguments were between Woods and officers; Spencer willingly joined in the verbal jousting, and again continued his verbal sparring with a second officer even though the first officer had, according to Spencer, made threatening comments. Further, the first two officers Spencer encountered during the final and fatal engagement were shot repeatedly in the back while attempting to exercise a lawful arrest on Woods. The evidence also indicates that Spencer made statements following the. earlier encounters with the officers that if the officers . ■ returned he . would ‘bust ’em’ (R. 913), and that ‘they was gonna get’ the officers if they returned. (R. 1638.) Additionally, Spencer,, knowing that the officers had returned because he looked out the window, exacerbated the situation by intentionally grabbing his loaded SKS assault rifle and proceeding toward the commotion in the kitchen. This evidence further militates against any contention that the murders were committed in a sudden passion and thus warranted such a jury instruction. Because the evidence did not support a charge on heat-of-passion manslaughter, the trial court properly rejected Spencer’s request for such a charge.”
Spencer, 58 So.3d at 244-45.
In his Rule 32 petition, Spencer failed to meet his burden of pleading facts that, if true, would establish that counsel was ineffective for failing to argue adequately that he was entitled to a jury instruction on heat-of-passion manslaughter. In his petition, Spencer argued that “trial counsel failed to adequately marshal the evidence in support of such an instruction,” but he failed to plead what evidence supported a heat-of-passion-manslaughter instruction. (C, 690.) Spencer failed to allege facts that, if true, would establish that he was faced with an imminent assault. In fact, Spencer, failed to allege any facts that would indicate that he. was entitled to a jury instruction on heat-of-passion manslaughter. Consequently, Spencer failed to meet his burden to plead the full factual basis. of this claim, and the circuit court correctly dismissed it pursuant to Rules 32.3; 32.6(b); and 32.7(d), Ala. R.Crim. P.
*612 E.
Spencer next argues that his trial counsel was ineffective for failing to investigate and present mitigation' evidence at the penalty phase. Specifically, he asserts that there was no testimony that he had been using drugs since he was young, that he was raised in impoverished conditions, that he lived in violent neighborhoods, that he had post-traumatic stress disorder, and that he had brain injuries from his childhood. ■
The circuit court stated the following concerning this claim:
“Spencer’s request for an evidentiary hearing on this claim is dismissed as a matter of law because no material issue of fact or law exists which would entitle Spencer to relief. Spencer cannot prove that he was prejudiced by counsel’s failure to' call more or different witnesses during the penalty phase of his trial because the jury recommended that he receive a life without parole sentence— the best sentence he could hope for.
“Moreover, the new evidence does not establish ‘ that the outcome of the sentence imposed would have been different.' The four aggravating circumstances far outweigh any new and additional mitigating circumstances' offered by Spencer in his Rule 32 petition. As noted in the amended sentencing order of March 30, 2009, the" ‘officers were gunned down while they attempted to serve a warrant of arrest for one of the occupants 6f this illegal drug house’ to avoid a lawful arrest or to affect an escape under aggravating circumstance 13A-4-59(5). As also noted: ‘These officers were acting as agents ■ of the Court to duly serve these warrants and two' of the three were gunned down from behind without even an opportunity to draw their weapons.’ The capital offense was also committed to disrupt or hinder the lawful exercise of a government function or enforcement of the laws. This Court found as follows concerning this aggravating circumstance: ‘The Court places great weight on this factor. If we are to have law and order in a civilized society, then officers like these, who were gunned down trying to perform a government function or enforce the law, must mean, something.’ This Court also found that Spencer intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct in violation of § 13A-5-49(9).
“The amended sentencing order of March 30, 2009, also states:
“ ‘By their verdicts, the jury found that the defendant had the particularized intent to kill all three of these officers. This court did not believe this defendant’s testimony that anyone pointed a weapon at him because the physical evidence refutes this testimony.
“‘There was not one shred of remorse from the defendant during his taped statement to the police just after, the murders nor his testimony at trial. In fact just to the contrary, he seemed to feel he was justified in killing these three officers who were acting in the line and scope of their sworn duty. This is the most brutal and violent attack on law enforcement officers this Court has seen in its combined thirty years as a prosecutor, defense lawyer, and as judge.’
“The following is also stated in the amended sentencing order:
“‘This defendant posed a grave danger to the public. He operated a drug selling operation and maintained this operation in defiance of the law enforcement authorities by use of violence. The defendant made numerous *613 threats that he would kill the police officers if they came back to the house “... to f-with us ... The defendant followed through on these threats.’
“The aggravating circumstances in this case are substantial and clearly outweigh the mitigating circumstances offered at trial and those offered by Spencer in his second amended Rule 32 petition. This is especially so where Spencer followed through on his threats to murder the police officers if they returned to the house. Spencer cannot prove that he was prejudiced by his attorney’s failure to present more or different mitigating evidence because death is the appropriate punishment for Spencer. Spencer’s request for an evi-dentiary hearing is denied because there is no material issue of fact or law which exists that would entitle him to relief.”
(C. 80-82.)
As this Court stated in Hooks v. State, 21 So.3d 772 (Ala.Crim.App.2008):
“ ‘Appellant’s contention that his trial counsel rendered ineffective assistance of counsel during the penalty phase of the trial is repudiated by the fact that the jury recommended life in this case: Lewis v. State, 398 So.2d 432 (Fla.1981); Douglas v. State, 373 So.2d 895 (Fla.1979).’ ”
Hooks, 21 So.3d at 791 (quoting Buford v. State, 492 So.2d 355, 359 (Fla.1986)). See also Coleman v. State, 64 So.3d 1210, 1224 (Fla.2011) (“This Court has repeatedly held that a defendant cannot demonstrate prejudice for counsel’s failure to present mitigation to the jury, as opposed to the judge, when the jury recommended- a life sentence.” (emphasis omitted)).
Moreover, according to Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), in considering whether a postconviction 'petitioner can establish prejudice in an attorney’s failure to present more mitigation evidence at the penalty phase of a capital-murder trial, the court may “reweigh the evidence in aggravation against the totality of available mitigating evidence.” Wiggins, 539 U.S. at 534. Here, the same judge who sentenced Spencer to death reweighed the mitigating evidence presented at trial, the mitigating evidence alleged in the Rule 32 petition, and the aggravating circumstances established at trial and found that there was no probability that the omitted mitigating evidence would have altered Spencer’s sentence.
The record shows that at the penalty phase of Spencer’s trial, counsel presented the testimony of Spencer’s mother, Patricia Spencer, and Spencer’s uncle, Fred Pyles. Spencer’s mother testified that Spencer was the middle of three children, that he was the peacemaker among the children because the other two were always fighting, that he was not violent, that he had never been a problem, and that Spencer had always been a good boy. Pyles testified that Spencer was raised in a single-parent household, that his mother had held multiple jobs to support the family, that Spencer was quiet, that Spencer went to church regularly, that Spencer was the peacemaker in his household, that Spencer had no father figure, that he had never seen Spencer act violently, that Spencer was a father, and that Spencer was remorseful for his actions that led to the officers’ deaths. At the judicial sentencing hearing, counsel presented the testimony of Dr. Shealy, who had evaluated Spencer for the sentencing hearing. Dr. Shealy said that Spencer had no history of violence, that he was a devoted father to his two children, that he was active in his church, and that he had acted under extreme- emotional duress that may have been “exacerbated by the - influence of *614 drugs that he was under at the time of the offense.” (Trial R. 3469.)
At the judicial sentencing hearing, trial counsel also presented the report compiled by Dr. Shealy about Spencer’s mental health. This report is detailed in Part III.C.3. of this opinion.
In Spencer’s amended petition, Spencer pleaded that counsel was ineffective for failing to present detailed testimony about the lives of Spencer’s mother and father; that Spencer’s mother had a tragic and traumatic life; that she was a neglectful mother to Spencer;' that Spencer frequently moved in his childhood; that Spencer was raised in poverty; that Spencer’s mother received food stamps; that Spencer was raised in an area where there was violence, gang activity, and drugs; that Spencer’s life was affected when he witnessed the shooting death of a friend in 1998; that Spencer started using drugs in his early teen years; that Spencer did poorly in school; and that Spencer had been affected by the violence in his life. Dr. Schwartiz-Watts also stated that Spencer suffered from post-traumatic stress disorder and that he had brain injuries that he had suffered as a child.
This Court has reviewed the mitigation evidence that Spencer pleaded should have been presented at his penalty-phase hearing, as well as the evidence that was presented at Spencer’s trial, and agrees with the circuit court that the omitted mitigating evidence would have had no impact on Spencer’s sentence of death. In other words, considering the omitted mitigating evidence with the evidence presented at trial would not have altered a “reasonable decisionmaker[’s]” decision to sentence Spencer to death. Williams v, Allen, 542 F.3d 1326, 1345 (11th Cir.2008) Thus, Spencer could establish no prejudice. This claim was correctly summarily dismissed pursuant to Rule 32.7(d), Ala. R.Crim. P,, because it presented no material issue of fact or law that would entitle Spencer to relief.
F.
Spencer also argues that his trial counsel was’ineffective at the judicial sentencing hearing. He makes several different arguments in support of this claim.
1.
First, Spencer argues that his trial counsel .was ineffective for failing to challenge the aggravating factors relied,on by the State to support a sentence of death. ¡ _
When Sentencing Spencer to death, the circuit court found the existence of four aggravating circumstances: 1) that Spencer knowingly created a great risk of death to many persons in the commission of the crime, § 13A-5-49(3), AJa.Code 1975; 2) that the capital offenses were committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody, § 13A-5-49(5), Ala.Code 1975; 3) that the capital offenses were committed to disrupt or hinder the lawful exercise of a government function or the enforcement of laws, § 13A-5-49(7), Ala.Code 1975; and 4) that Spencer intentionally caused the death of two or more persons during one act or course of conduct, § 13A-5-49(9), Ala.Code 1975. .
The circuit court stated the following concerning this-claim:
“Spencer asserts that counsel should have alleged that he lacked the specific intent to knowingly create a great risk of death during the capital offense (Ala.Code, § 13A-5-47(3))or to intentionally cause the death of two or more persons by one act or pursuant to one scheme or course of conduct (Ala.Code, § 13A-5-47(9)) because of his intoxication. However, as set forth .,. Spencer has yet to *615 plead facts in his Rule 32 petition that he was intoxicated to the point of insanity. Moreover, his actions during the crime clearly show that he knew what he was doing and intended the consequences of his actions. Counsel, therefore, were not ineffective for failing to challenge these aggravating circumstances. No material issue of fact or law exists concerning this claim. Spencer’s request for an evidentiary hearing is, therefore, denied.
“Spencer next asserts that his attorneys should have presented evidence— through the testimony of Tyran Cooper—that the police officers were at the apartment for the illegal purpose of bribe-taking or in retaliation for unpaid bribes which caused him to be in fear for his life which would have negated the aggravating circumstances that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody (Ala.Code, § 13A-5-47(5)) or to disrupt or hinder the lawful exercise of a government function or the enforcement of laws (Ala.Code, § 13A-5-47(7))¿ This same argument was made and rejected by the Court of Criminal Appeals on direct appeal. Spencer v. State, 58 So.3d at 240-44. Tyran Cooper’s testimony would not entitle Spencer ta relief, either. As the Court of Criminal Appeals noted on direct appeal, Cooper was not present during the murders and there was no’ indication (and there is no indication) that Cooper would testify to any specific communications between himself and Spencer that would support a self-defense argument. Spencer, 58 So.3d at 239.
“Moreover, as the Court of Criminal Appeals found, any fear that Spencer had about the officers was not reasonable. Spencer, 58 So.3d at 244. There is absolutely nothing in the record that indicates that the officers made Spencer fear for his life when they entered the apartment. Their weapons were not drawn and their attention was focused solely on Woods. They never even attempted to approach Spencer. In fact, the officers. did not attempt to use any force against Spencer, much less excessive force. As the record reveals, Spencer was asleep on the couch when the officers entered the apartment. When Spencer heard a noise, he got up and looked out the bedroom window .to see what was happening. He then saw Woods and started firing on the officers. Spencer testified that- he did not stop firing until all of the officers were down. Nor would Tyran Cooper’s testimony add to Spencer’s argument that the officers had a felonious intent when they entered .the apartment because there is no indication that Cooper communicated to Spencer that he was having any problems with the police officers.
“Spencer used excessive force against Officers Owen, Chisolm, and Bennett. This is especially true where the officers were not attempting to do anything to Spencer. They never spoke a word to Spencer after they entered the apartment and their weapons were holstered. Counsel were not ineffective for failing to have Tyran Cooper available to testify at Spencer’s trial. Nor was Spencer prejudiced by this failure. Spencer’s request for an evidentiary hearing on this claim is denied because no ‘material issue of fact or law exists’ which would entitle him to relief. Rule 32.7(d), Ala. R.Crim. P.”
(C. 82-85.)
The record of Spencer’s trial shows that defense counsel objected to the aggravating circumstance that Spencer, knowingly created a great risk of death to many persons. (Trial R. 1849-1854.) However, *616 the trial court stated that, based on the holdings in Madison v. State, 718 So.2d 90 (Ala.Crim.App.1997), and White v. State, 587 So.2d 1218 (Ala.Crim.App.1990), there was sufficient evidence to support this aggravating circumstance and that it was going to instruct the jury on this aggravating circumstance. This Court agrees with the court’s assessment. The shootings took place in an apartment complex in a residential neighborhood. Officer Collins testified that Spencer fired from the doorway of the apartment to where his patrol car was parked and that bullets ricocheted off the vehicle. Residents were in the apartment complex at the time. This aggravating circumstance was correctly applied based on the holdings in Madison and White. Moreover, testimony established that police were at the residence to serve an arrest warrant on Woods. Certainly, the aggravating circumstances set out above were proven beyond a reasonable doubt at Spencer’s- trial and were correctly applied. “Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee v. State, 44 So.3d at 1173. This claim was correctly summarily dismissed because there was no material issue of fact or law that would entitle Spencer to relief. See Rule 32.7(d), Ala. R.Crim. P.
2.
Spencer also argues that counsel failed to object to improper victim-impact testimony offered by the State during the judicial sentencing hearing. Specifically, he argues that, at the sentencing hearing before the circuit judge, the State asked six family members of the victims to testify about the sentence that Spencer should receive. All testified that Spencer should be sentenced to death. The circuit court stated the following concerning this claim:
“This evidence was offered during the judicial sentencing hearing and was not offered to the jury. Payne v. Tennessee, 501 U.S. 808 (1991), cited by Spencer, involved introduction of victim impact evidence before the jury and not evidence presented to a judge. This Court did not consider this evidence when it sentenced Spencer to death. Amended Sentencing Order, March 30, 2009, p. 9.”
(C. 85-86.)
In the circuit court’s amended sentencing order, it specifically stated that it had disregarded pleas for the court to consider the sentence on the basis of passion or prejudice. (Trial C. 98.) “We assume ... that the trial judge knows the law....” Ex parte Anonymous, 810 So.2d 786, 793 (Ala.2001). This claim is refuted by the judge’s holding and the record on direct appeal. McNabb v. State, 991 So.2d 313, 320 (Ala.Crim.App.2007). Therefore, this claim was correctly summarily dismissed pursuant to Rule 32.7(d), Ala. R.Crim. P.
3.
Spencer next argues that his trial counsel was ineffective for failing to object to evidence that was considered by the sentencing court that Spencer had no opportunity to hear or rebut. Specifically, he asserts that counsel “failed to object, to request disclosure, or otherwise to raise any concern, when the Court referenced ‘all the letters I’ve received from the citizens pro and con [the death sentence] about this case [that] are not in the file. They are in a box in my office.’ ” (C. 748.)
The circuit court stated the following concerning this claim:
“Spencer requests an evidentiary hearing on his claim that counsel failed to object to evidence considered by the Court during the judicial sentencing hearing that he had no opportunity to see or rebut. Spencer’s request is de *617 nied because this claim is not sufficiently pleaded. Spencer does not allege that this Court relied on this information when he overrode the jury’s life without parole sentence recommendation and sentenced Spencer to death.
“In addition, Spencer’s request is denied because the claim can be resolved on the record before, the Court. While this Court noted that it had received letters from citizens pro and con about this case, this Court did not consider those letters in making its sentencing determination. In fact, this Court stated in the March 30, 2009, amended sentencing order that it disregarded ‘pleas or references to the Court to consider the sentence on the basis of passion or prejudice.... ’ This Court did not rely on any information that Spencer did not see or was not allowed to rebut. Spencer’s discovery request on this claim is, therefore, denied.”
(C. 101-02.)
The circuit court specifically stated in its amended sentencing order that it did not consider any pleas as they related to the sentence. The circuit court also stated in the postconviction order that it had not considered the challenged documents when determining Spencer’s sentence. ■ This claim is refuted by the circuit court and the record on direct appeal. McNabb v. State, 991 So.2d at 320. Therefore, the circuit court did not err by summarily dismissing this claim pursuant to Rule 32.7(d), Ala. R.Crim. P.
G.
Spencer next argues that the cumulative effect of counsel’s errors resulted in prejudice to him.
The circuit court stated the following concerning this claim:
“Spencer’s claim that the cumulative effect of counsel’s errors denied him his right to the effective assistance of counsel during the penalty phase of the trial is not sufficiently pleaded, therefore, his request for an evidentiary hearing is denied. Spencer does not specifically identify what errors should be considered cumulatively and does not allege how the cumulative effect of any errors denied him the effective assistance of counsel.”
(C. 102.) This Court agrees that Spencer’s claim relating to the cumulative effect of counsel’s alleged errors was insufficiently pleaded. Because Spencer failed to plead sufficient facts that would entitle him to relief, this claim was correctly dismissed without a hearing. See Rule 32.6(b), Ala. R.Crim. P.
H.
Spencer argues that his appellate counsel was ineffective for failing to raise a cognizable issue on appeal. Specifically, Spencer pleaded that' his appellate counsel was ineffective for failing to argue that the State presented inconsistent theories at his June 2005 trial and at his codefendant’s, Nathaniel Woods’s, October 2005 trial and that the State’s actions violated the decision of the Supreme Court of the United States in Bradshaw v. Stumpf, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005).
The circuit court stated the following concerning this claim:
“Spencer asserts that the prosecution argued at his trial that he shot Officer Bennett and argued at [his codefen-dant’s] trial that it was not clear who shot Officer Bennett.' The prosecution did not present inconsistent theories at Spencer’s trial and at Woods’s trial. At Spencer’s trial, the prosecution argued that Spencer shot Officer Bennett and at Woods’s trial the prosecution argued that it was not clear who actually fired *618 the last shot into Officer Bennett. These are not inconsistent theories ... but are different arguments from the evidence presented at each trial.
“In addition, the facts in this case are distinguishable from the facts in Bradshaw v. Stump[f], 545 U.S. 175 (2005)— the case relied on- by Spencer. In Stumpff], the defendant maintained at all times that he did not shoot the lone victim and was sentenced to death for his involvement in the murder. In the instant, case, Spencer admitted during his trial that he fired the final shot into Officer Bennett and also admitted shooting and killing the other officers. There is no doubt from the record that Spencer was the primary shooter in the deaths of the three police officers. Moreover, in the instant case, the jury recommended that Spencer be sentenced to life imprisonment without the possibility of parole rather than death. Based on these facts, Spencer cannot prove that he was prejudiced when his appellate counsel failed to argue on appeal that the prosecution allegedly presented inconsistent theories as to who fired the last shot at Officer Bennett. Because no material issue of fact or law exists concerning this claim, Spencer is not entitled to an evidentiary hearing on this claim.”
(C. 86-87.)
Initially, this Court notes that appellate counsel was not ineffective for failing to raise this issue on appeal because Spencer was tried months before Woods; therefore, the trial record would have been silent as to the facts surrounding this claim. Counsel cannot be ineffective for failing to raise an issue that has no factual support in the record. See Ray v. State, 80 So.3d 965, 988 (Ala.Crim.App.2011).
In addressing a similar issue, this Court in Johnson v. State, [Ms. CR-05-1805, June 14, 2013] — So.3d - (Ala.Crim.App.2007)(opinion on return to remand), stated:
“Many courts have recognized that the government may argue inconsistent theories in cases involving multiple defendants. In addressing this issue, federal courts have upheld the State’s presentation of inconsistent evidence in codefendants’ trials. The United States Court of Appeals for the Fifth Circuit has stated:
“ ‘[The defendant] argues that his constitutional due process rights were violated when the government presented inconsistent theories at two criminal trials—namely, at Cooper’s [codefendants’] trial the government argued that Cooper shot Marshall, and at [the defendant’s] trial, the government argued that [the defendant] shot Marshall. We have held, though, “a prosecutor can make inconsistent arguments at the separate trials of co-defendants without violating the due process clause.” Beathard v. Johnson, 177 F.3d 340, 348 (5th Cir.1999); see also Nichols v. Scott, 69 F.3d 1255, 1272 (5th Cir.1995) ("Two things, however, may be said about the rather amorphous doctrine of judicial estoppel. First, there is no indication in the authorities that it is constitutionally mandated. Second, it has apparently never- been applied against the government in a criminal case.”). In any event, the inconsistencies were immaterial to the conviction since [the defendant] could have been convicted for the same offense, carjacking resulting in death and aiding and abetting the same, under both theories. See United States v. Paul, 217 F.3d 989, 998-99 (8th Cir.2000) (“When it cannot be determined which of two defendants’ guns caused *619 a fatal wound and either defendant could have been convicted under either theory, the prosecution’s argument at both trials that the defendant on trial pulled the trigger is not factually inconsistent.”); cf. Bradshaw v. Stumpf, 545 U.S. 175, 187, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (upholding a guilty plea where the defendant’s assertions of inconsistency related entirely to which individual shot the victim but where “the precise identity of the triggerman was inma-terial to [defendant's conviction for aggravated murder.”).’
“United States v. Frye, 489 F.3d 201, 214 (5th Cir.2007).
“ ‘Courts presented with situations where there are genuine evidentiary disputes as to who was responsible for a crime among various defendants have shown greater willingness to permit a prosecutor to argue inconsistent theories in separate trials. See Beathard v. Johnson, 177 F.3d 340, 348 (5th Cir.1999) (“The record does not support such a claim. Price had two live eyewitnesses to the crime, both charged with capital murder and both accusing the other of being the most culpable_ Price, as well/as every juror involved, knew that both of the stories could not have been true.”); Parker v. Singletary, 974 F.2d 1562, 1578 (11th Cir.1992) (“But no due process violation occurred,, because there was no necessary contradiction between the state’s positions in the trials of the three co-defendants. Given the uncertainty of the evidence, it was proper for the prosecutors in the other co-defendants’ cases to argue alternate theories as to the facts of the murder.”).’
“United States v. Ganadonegro, 854 F.Supp.2d 1088, 1098 (D.N.M.2012),
“Other state courts addressing this issue have reached the same conclusion.
“ ‘[W]e are in accord with the courts that hold that, a due process violation will only be found when the demonstrated inconsistency exists at the core of the State’s case. Discrepancies based on rational inferences from ambiguous evidence will not support a due process violation provided the two theories are supported by consistent underlying facts. We recognize that the evidence presented at multiple trials is going to change to an extent based on relevancy to the particular defendant and other practical matters. The underlying core facts, however, should not change. The few courts that have found due process violations did so in cases where the inconsistencies were inherent to the State’s whole theory of the case or where the varying material facts were irreconcilable. It is this type of inconsistency that renders the conviction fundamentally unfair, thus violating due process.’
“Sifrit v. State, 383 Md. 77, 106, 857 A.2d 65, 82 (2004).
“ ‘Courts have ... found no due process violation stemming from inconsistent arguments as to who was the killer in the relatively common circumstance where each defendant can be held equally guilty as an aider and abettor upon the same inconclusive evidence.’
“State v. Poe, 284 Neb. 750, 768, 822 N.W.2d 831, 845 (2012).
“There is no due-process violation when the State argues at one trial that one codefendant shot the victim and at the codefendant’s trial argues that that codefendant shot the victim.
‘“When it cannot be determined which of two defendants’ guns caused a fatal wound and either defendant *620 could have been convicted under either theory, the prosecutor’s argument at both trials that the defendant on trial pulled the trigger is not factually inconsistent. Thus, because there was evidence that supported both theories, and since [the defendant] could have been convicted of aiding and abetting under either theory, we find no error.’
“United States v. Paul, 217 F.3d 989, 998-99 (8th Cir.2000).
“Thus, because there is no merit to the legal theory underlying this claim of ineffective assistance, the claim was properly dismissed. See, e.g., Lee v. State, 44 So.3d 1145, 1173 (Ala.Crim.App.2009) (counsel cannot be ineffective for failing to raise a claim that has no merit).”
— So.3d at-. Because the substantive claim had no merit, appellate counsel could not be ineffective for failing to raise this issue on appeal. See Lee, supra.
Furthermore,
“[c]ounsel need not raise and address each and every possible argument on appeal to ensure effective assistance of counsel. Indeed, the process of ‘winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.’ Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). See also, Johnson v. State, 612 So.2d 1288, 1303 (Ala.Crim.App.1992).”
Brown v. State, 663 So.2d 1028, 1035 (Ala.Crim.App.1995).
This claim was correctly summarily dismissed because there is no material issue of fact or law that would entitle Spencer to relief. See Rule 32.7(d), Ala. R.Crim. P.
IV.
Spencer next raises a number of arguments regarding why he believes that the circuit court erred by finding that some of his claims were procedurally barred pursuant to Rule 32.2, Ala. R.Crim. P.
A.
Spencer first argues that the circuit court’s application of the procedural bars contained in Rule 32.2, Ala. R.Crim. P., to several of his claims conflicts with the Alabama Supreme Court’s decisions in Ex parte Beckworth, 190 So.3d 571 (Ala.2013), and Ex parte Hodges, 147 So.3d 973 (Ala.2011). Specifically, Spencer argues that the circuit court violated Supreme Court precedent in Beckworth and Hodges by summarily dismissing well-pleaded claims “merely on the basis of the State’s suggestion of preclusion....” (Spencer’s brief, at 94.)
This Court disagrees with Spencer’s characterization of the Supreme Court’s holdings in Beckworth and Hodges. The Supreme Court in Beckworth found reversible error in the circuit court’s summary dismissal of Beckworth’s claim alleging that the State had failed to disclose evidence. The Court framed the issue as follows:
“In this ease, we must decide whether a petition grounded on Rule 32.1(a) must plead facts tending to negate the affirmative defenses of preclusion under Rule 32.2(a)(3) and (5) in order to survive summary disposition under Rule 32.7(d). More specifically, must a petition allege facts indicating that the claim could not have been raised at trial or on appeal in order to ‘state a claim’ under Rule 32.1(a)?”
Beckworth, 190 So.3d at 573-74. In conclusion, the Court held: “[W]e must conclude that Beckworth’s Rule 32 petition should not have been dismissed on the ground *621 that his claim for relief under Rule 32.1(a) lacked allegations negating the preclusive bars of Rule 32.2(a)(3) and (5).” 190 So.3d at 574. The primary reason for the Supreme Court’s holding in Beckworth was that the circuit court dismissed the post-conviction petition only three days after the State had asserted preclusion grounds and without affording Beckworth the opportunity to address the State’s pleaded grounds of preclusion.
In Ex parte Hodges, the Supreme Court considered the summary dismissal of a claim of juror misconduct after Hodges specifically responded to the State’s preclusion'argument as to why the claim was not procedurally barred. The Supreme Court stated:
“The State’s argument confuses and conflates the requirements of pleading and proof. In his Rule 32 petition Hodges asserted the manner in which the answers of six potential jurors allegedly were nonresponsive to specific voir dire questions. When the State sought a summary dismissal of the claim, Hodges replied that his counsel could not have known about the alleged juror misconduct in time to raise the issue at trial or on appeal. Nothing to. the contrary appears on the record. Indeed, it is somewhat disingenuous for the State to fault Hodges for providing no evidence in support of his allegations when it was the State that successfully persuaded the trial court to forgo a hearing at which such evidence could have been presented.
“In short, Hodges has met his initial burden of pleading a claim of juror misconduct, and the State has met its burden of asserting a preclusion. There being no evidence on the record that Hodges knew or reasonably should have known of the jurors’ alleged lack of candor in time to raise the issue on appeal, Hodges is entitled to an evidentiary hearing on his claim.”
147 So.3d at 977 (footnote omitted).
In neither Beckworth nor Hodges did the Supreme Court reverse long-established law that a claim'may be summarily dismissed after the State pleads a ground of preclusion and that preclusion ground is not addressed by the petitioner in his response to the State’s assertions. Indeed, such a conclusion would place a heavy burden on trial courts. Here, Spencer pleaded certain claims, the State asserted grounds of preclusion related to those claims, Spencer did not answer the State’s preclusion arguments, and the circuit court summarily dismissed those claims based on the preclusion grounds of Rule 32.2(a), Ala. R.Crim. P.
The circuit court did not violate the Supreme Court’s holdings in Beckworth and Hodges by summarily dismissing the following claims even though they were sufficiently pleaded.
B.
Spencer next argues the circuit court erred in summarily dismissing his claim that the prosecutor violated Spencer’s constitutional rights by interfering with his right to present evidence in his defense.
The State pleaded that this claim was procedurally barred because it could have been raised at trial or on appeal but was not. (C. 904-05.) The circuit court correctly found that this claim was procedurally barred based on Rule 32.2(a)(3) and Rule 32.2(a)(5), Ala. R.Crim. P. Washington v. State, 95 So.3d 26, 57 (Ala.Crim.App.2012). Therefore, this issue does not entitle Spencer to any relief.
C.
Next, Spencer argues that the circuit court erred in summarily dismissing *622 his claim that Alabama’s method of execution constitutes cruel and unusual punishment.
The State responded that this claim was procedurally barred because it could have been raised at trial or on appeal but was not. (C. 905-06.)
The circuit court stated the following concerning this claim:
“Spencer’s general claim that Alabama’s method of execution is unconstitutional is procedurally barred from review because it was not raised at trial or on direct appeal. Rule 32.2(a)(3) and (5)....
“In addition ... [t]he Alabama Supreme Court and the Alabama Court of Criminal Appeals have both rejected the claim that the State’s lethal injection protocol, as applied, is unconstitutional. Ex parte Belisle, 11 So.3d 323, 339 (Ala.2008); Scott v. State, [163 So.3d 389 (Ala.Crim.App.2012)]. And, the Eleventh Circuit Court of Appeals has rejected the claim that Alabama’s execution method has become unconstitutional simply because the State has substituted pentobarbital for sodium thiopental as the first drug in the State’s three-drug lethal injection cocktail. Powell (Williams) v. Thomas, 641 F.3d 1255, 1257 (11th Cir.2011) (‘The evidence presented does not demonstrate that the ADOC’s use of pentobarbital creates substantial risk of serious harm to Williams.’); Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir.2011). See also Valle v. Singer, 655 F.3d 1223, 1237(11th Cir.2011); DeYoung v. Owens, 646 F.3d 1319,1327 (11th Cir.2011). Thus, Spencer’s claims alleging that Alabama’s lethal injection protocol is unconstitutional are without merit.”
(C. 103-04.) This Court agrees with the circuit court’s findings.
This Court has repeatedly held that a claim that Alabama’s method of execution constitutes cruel and unusual punishment is procedurally barred in a postconviction proceeding because it could have been raised at trial or on appeal. See Yeomans v. State, 195 So.3d 1018 (Ala.Crim.App.2013); Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009); Madison v. State, 999 So.2d 561 (Ala.Crim.App.2006); Adkins v. State, 930 So.2d 524 (Ala.Crim.App.2001); Hooks v. State, 822 So.2d 476 (Ala.Crim.App.2000); and Davis v. State, 720 So.2d 1006 (Ala.Crim.App.1998), Consequently, this claim was correctly dismissed because it was procedurally barred pursuant to Rule 32.2(a)(3) and Rule 32.2(a)(5), Ala. R.Crim. P.
D.
Spencer next argues that the circuit court erred in summarily dismissing his claim that the circuit court’s decision not to follow the. jury’s recommendation that Spencer be sentenced to life in prison without the possibility parole is unconstitutional. .
The State responded that this 'claim- was procedurally barred because it had been raised and addressed on direct appeal. (C. 906.) The record shows that counsel was aware of this claim in -time to raise it on appeal.
The circuit court agreed and found that this claim was procedurally barred because it had been raised and addressed on direct appeal. See Rule 32.2(a)(4), Ala. R.Crim. P.
On direct appeal, Spencer argued that Alabama’s statute that provides for the override of a jury’s sentence recommendation in a capital case is unconstitutional. This Court stated:
“Spencer argues that the jury-verdict-override sentencing scheme of Ala *623 bama’s capital-murder statute is unconstitutional for a number of reasons.
“Both this Court and the Alabama Supreme Court have repeatedly denied the very claims now raised by Spencer on appeal. See Brownfield v. State, [44 So.3d 1 (Ala.Crim.App.2007)], and the cases cited therein, with regard to the impact of Ring [v. Arizona, 536 U.S. 584, (2002),] on Alabama’s capital-murder statute and sentencing scheme. See also Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), with regard to Spencer’s contention regarding the weighing of aggravating and mitigating circumstances.”
Spencer, 58 So.3d at 248.
This claim was addressed on direct appeal; therefore, it was procedurally barred in this postconviction proceeding. See Rule 32.2(a)(4), Ala. R.Crim. P. Consequently, the circuit court did not err by summarily dismissing it. Rule 32.7(d), Ala. R.Crim. P.
E.
Spencer next argues that the cumulative effect of the claims raised in his postcon-viction petition violated his rights to due process and a fair trial.
The State responded that this claim was procedurally barred because it could have been raised at trial or on direct appeal. (C. 907-08.) The circuit court agreed and found that this claim was procedurally barred because it could have been raised at trial or on appeal. See Rule 32.2(a)(3) and (a)(5), Ala. R.Crim. P. This Court has found a similar claim to be procedurally barred. See Hunt v. State, 940 So.2d 1041, 1072 (Ala.Crim.App.2005). Accordingly, the circuit court did not err by summarily dismissing this claim. Rule 32.7(d), Ala. R.Crim. P.
For the reasons stated above; this Court affirms the circuit court’s summary dismissal of Spencer’s postconviction petition attacking his capital-murder convictions and sentences of death.
AFFIRMED.
WELCH, KELLUM, BURKE, and JOINER, JJ,, concur.

 Note from the reporter of decisions: In the Court of Criminal Appeals’ opinion on direct appeal, Spencer v. State, 58 So.3d 215 (Ala.Crim.App.2008), this victim's last name is spelled "Chisolm.”

1. Woods was also convicted of capital murder and sentenced to death. His conviction and sentence were affirmed on direct appeal. See Woods v. State, 13 So.3d 1 (Ala.Crim.App. 2007).

. This Court has recognized the practical reasons for allowing a lower court to adopt the State’s proposed order in postconviction proceedings. " ' " ‘The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning.'"'" Jackson v. State, 133 So.3d 420, 469 (Ala.Crim.App.2009) (quoting Pruitt v. State, 903 N.E.2d 899, 939 (Ind.2009), quoting in turn Saylor v. State, 765 N.E.2d 535, 565 (Ind.2002), quoting in turn Prowell v. State, 741 N.E.2d 704, 708-09 (Ind.2001)).

. As this Court previously stated, any claim concerning unidentified prospective jurors does not meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. See Washington v. State, supra.

. The shootings occurred at approximately 1:00 p.m. on July 17, 2004.

. Seroquel is an antipsychotic drug.